MACCARONE et al. v. PINCUS & TO-
BIAS, Inc.

No. 7349.

District Court, E. D. New York.

April 22, 1935.

Briesen & Schrenck, of New York City (Hans v. Briesen and Fred A. Klein, both of New York City, of counsel), for plaintiffs.

Watson, Bristol, Johnson & Leavenworth, of New York City (C. V. Johnson, D. A. Woodcock, and Charles P. Bauer, all of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is a suit for the alleged infringement of patent No. 1,569,823, issued by the United States Patent Office to Fred Maccarone, for shoe structure, granted January 12, 1926, on an application filed August 5, 1925.

The plaintiff Fred Maccarone is the owner of the legal title to the patent in suit, and the plaintiff Del-Mac System Corporation is the exclusive licensee of the patent in suit, subject to certain outstanding nonexclusive licenses previously issued to C. P. Ford & Co., P. Sullivan Shoe Company, Lax & Abowitz, Inc., and others, and excluding shoes using a welt construction.

The defendant does not, in its alleged infringing products, make use of any welt construction and therefore does not come under the exclusion as aforesaid.

The defendant is a New York corporation engaged in the manufacture of shoes in the borough of Brooklyn, and is licensed under the Sbicca patents Nos. 1,838,708 and 1,902,725.

A discussion of many of the questions considered in this suit, and a description of the method of constructing a turned-shoe, the cemented shoe, and a "McKay" shoe will be found in my opinion in Sbicca-

Method Shoes, Inc., v. M. Wolf & Sons, Inc. (D. C.) 11 F. Supp. 239, which was based upon the Sbicca patents Nos. 1,838,-708 and 1,902,725, the testimony and exhibits in which suit were in large part stipulated into the instant suit.

The defendant has interposed the defenses of invalidity and noninfringement.

The patent relates particularly to women's shoes.

This suit is based on claim 2 of the patent in suit.

The patentee says in his specification: "One of the principal objects of the present invention is to provide a shoe construction which while closely simulating in appearance when finished, a turned-sole shoe, is free from many of the objectionable features incident thereto."

After reciting what he considers objectionable features of what are known as "McKay" shoes, and turned-sole shoes, he says:

"In contradistinction to this, the present invention comprehends an inner integral shank and heel member and rand to which the upper is stitched, and to which, in turn, the outsole is stitched, thereby rendering the shank rigid and immovable with respect to the upper and outsole.

"The invention furthermore comprehends a shoe structure of the character set forth which when finished presents no rough exposed stitching at the juncture of the upper with the sole as is present in shoes of the turned-sole type.

"The invention furthermore comprehends a shoe structure which while closely simulating shoes of the turned-sole type, entails a considerable economy both in labor and expense; which is highly efficient in its purpose, and comparatively simple in construction."

The plaintiffs' expert describes the Maccarone construction as having an insole member which includes an integral heel portion, a shank portion, and a rand leaving an opening in the insole at the ball of the shoe, the inner edge of the rand being skived on the under side. The insole member is placed upon a last, and the shoe upper is thereupon united to the insole section in such a manner as to leave the skived inner edge of the rand free. An outsole having an island at the ball portion thereof co-operates in the depressed or less elevated portions of the islanded structure to receive and accommodate and to mate with the skived edge of the rand, as well as those parts of the upper which have previously been united to the said rand.

We are, however, here concerned with what is required by claim 2 of the patent in suit, and that claim does not require the bevel on the inner edge of the insole and the corresponding bevel on the island of the outsole.

Claim 2 reads as follows: "2. In a shoe structure, an insole including an integral heel portion, a shank portion, and a ball portion, the said ball portion having a central opening therein defining a continuous marginal rand extending from the front of one side of the shank around the toe and to the front of the opposite side of the shank to afford means for initially stitching the upper to the insole, the said outsole having a marginal groove or depression conforming to the rand for receiving the same with the upper stitched thereto when the outsole is applied, whereby the central portion of the inner face of the outsole is disposed flush with the upper surface of the rand."

The meaning of the words of this claim is made clear by reference to figures 7 and 8 of the drawings of the patent in suit, and to Exhibits 33, 33B, 34, and 34A, comprising respectively an outsole and an insole, and two shoes made therewith, which according to plaintiffs' expert are illustrative of "the exact details of the figure in the drawings of the patent."

The following alleged prior art was introduced by the defendant:

Patent No. 301,226, to Albert G. Gardner, for inner sole for boots or shoes, granted July 1, 1884, on an application filed April 30, 1884, shows a skeleton insole having a unitary shank and rand, the rand being referred to as a strip, with an opening centrally of the ball part of the insole, the opening being closed by a stay-piece B, which is stitched or cemented to the insole about the edges of the opening.

In figures 3 and 4 the rand portion is shown as skived toward the opening.

Patent No. 307,033, to Jabez Elam, for shoe, granted October 21, 1884, on an application filed July 6, 1883, shows a short toe welt, indicated by B, which is formed about the last, and is unconnected with any other portion of an insole for the shoe. The upper is stitched directly to the outsole throughout the shank section on both sides, as there is no intermediate connec-

tion between the outsole and the upper, from the rear portion of the welt to the heel portion D. That patent has a shoulder b, in which the edge of the welt portion is sunk. The central portion of the outsole G of the Elam patent is raised with respect to the marginal portions of the sides, and the side walls of that central portion in figure 6 are shown to be beveled.

The welt B is cut at an angle.

As shown in figure 5, the welt is skived on the top side of the completed shoe and has a flat under side. In figure 6, the top of the welt is skived inwardly and downwardly, and then the edge is beveled outwardly away from the inner edge of the welt.

Patent No. 429,480, to Frederick B. Robinson and William J. Morgan, for insole, granted June 3, 1890, on an application filed September 13, 1889, shows the skeleton rand made in two pieces, with the shank piece attached to the skeleton insole by skiving and joining, which is a usual practice. It does not show an outsole. In figure 3 the rand is beveled at the edge of the opening therein.

Patent No. 1,593,264, to John A. Kelly, for shoe, granted July 20, 1926, on an application filed September 9, 1920. Figure 1 of that patent discloses a half sole structure consisting of a stay A, having what is called a temporary insole B, which is secured thereto by a chain stitch, so that it may be readily removed after the two have been separated. The insole stops at the oblique line shown in figure 2, and meets the shank. The outsole F has a channel about the ball portion, the inner edge of which channel is perpendicular to the bottom of the channel, or what would be the top of the channel in the completed shoe, the channel being formed by cutting a strip of leather from the sole blank. The strip is shown at A, in figures 1 and 5. The upper D is lasted to the stay A, and the edges of the upper are cut flush with the inside edge of the stay, so as to form a butt-joint with the channel.

Patent No. 1,597,685, to John A. Kelly, for art of making shoes, granted August 31, 1926, on an application filed February 16, 1921. This patent is not for the product but for the method of producing the shoe. The structure as shown in the drawings is a shoe of the "McKay" type, which is removed from the last before the outer sole is attached. The shoe as shown in figures 1 and 4 has a unitary insole A, comprising a shank and heel portion C, and a looped forepart B, to which the lasting allowance of the upper is secured by tacks or staples. There is secured to this lasted upper an outsole F, having a reduced margin at the forepart for receiving the looped forepart B of the insole A with the upper lasted thereto. The outsole is attached by "McKay" stitching g, which passes through it, the lasting allowance of the upper and the looped forepart B. The central portion of the inner face of the outsole F is disposed flush with the upper surface of the looped forepart B.

Patent No. 1,714,271, to John A. Kelly, for process of making shoes, granted May 21, 1929, on an application filed September 9, 1920. Renewed May 3, 1924. This patent is also for a method of making shoes, not the product.

The structure as shown in the drawings is a shoe of the "McKay" type, in which the stitch passes through the outsole, the lasting allowance of the upper, and the rand to which the lasting allowance is attached, and has the looped forepart insole made from two pieces of leather, the forepart piece being taken from the outsole when channeled, and leaving a reduced margin into which the lasted upper sets. The inside surface of the shoe is flat, and the rand is flushed with the center of the outsole.

The lastly described patent was not pleaded in the answer, but is relied on merely to show the state of the art. It adds nothing to the disclosure of Kelly patent No. 1,593,264.

Both of the Kelly patents, Nos. 1,593,-264 and 1,714,271, show a slightly different cut on the island edge than is shown in Kelly patent No. 1,597,685, but it seems quite clear to me that the rand could have been taken off either way, or with the well-known S-201 type of knife.

From a consideration of the prior art, I have reached the conclusion that the patent in suit does not disclose any novelty or invention.

The claim in suit of the patent in suit is not patentable over the disclosure of the Kelly patent No. 1,597,685, for the reason that the tacks of Kelly are obvious equivalents of the stitches 17 of the patent in suit, used for securing the lasting allowance to the insole, and because there would be no invention in using a gutter 21 in the upper surface of the outsole paralleling the margin, as suggested in the patent in suit,

in the place of the outsole, having a reduced margin as shown by Kelly.

As I read the claim in suit of the patent in suit, and it is with that and not with the commercial structure claimed to be made under the patent in suit comparison must be made, every element of the combination disclosed therein is shown in the combination of the Kelly patent No. 1,597,-685.

Invalidity cannot be escaped by reading into the claim in suit the element or elements, namely, the bevel on the inner edge of the insole, and the corresponding bevel on the island of the outsole, because such element or elements are not found in claim 2 of the patent in suit.

The looped portion of the insole is specified, in the other claims of the patent in suit, in which both the insole and outsole are recited as having a skived (i. e., beveled) inner edge.

Claim 2 was drawn in broader language, and it must be assumed that the omission was intended, and the element cannot be read into the claim either "for the purpose of making out a case of novelty or infringement." McCarty v. Lehigh Valley Railroad Co., 160 U. S. 110, 116, 16 S. Ct. 240, 242, 40 L. Ed. 358.

Plaintiff contends that such bevels were not found in the Kelly patent No. 1,597,-685, and are therefore a feature of novelty in the patent in suit, but the prior art in evidence shows that such bevels were known to the art prior to the patent in suit.

There is a sharp conflict as to whether Exhibits 35, 35A, 37, and 37A were illustrative of the structure shown in the Kelly patent, and as to their commercial suitability. I saw and heard the witnesses and I am convinced that those exhibits are fairly illustrative, and that the variation in the thickness of the material would not make it impossible to make a shoe with a square cut rand on the insole, and shoulder on the outsole, because, as the witness Sutcliffe said, any good shoemaker would make such provision whether he was using a looped forepart insole with a beveled edge or a square edge.

I was not impressed by the discussion by plaintiffs' expert, and the witness Sutcliffe, of the effect of variation in the size of the opening in the looped forepart with respect to that of the insole, where the parts were beveled, or where they were square cut, nor their criticism of the Kelly structure, in view of the crevices and ridges not only in the model of the Maccarone shoe (Exhibit 34), but also in the Nouvelle shoes (Exhibits J 17 and 23), alleged to have been made under the patent in suit. Again, we must not lose sight of the fact that the claim in suit does not recite that either the island of the outsole, or the inner edge of the looped forepart, is beveled.

Even if it be a fact, as contended by the plaintiffs' expert, that in the model Kelly shoe (Exhibit 37) the lasting allowance was spaced one-eighth of an inch from the edge of the looped forepart of the insole, the shoe would not be rendered impracticable, because in use the entire insole is covered with a sock lining, the lasting allowance need not be trimmed back so far or the space could be filled, if desired, and filling holes with a filler was customary. Further, by slipping the rand taken from the outsole, as shown by the Kelly patent No. 1,597,685, a shoulder can be left so that the inside edge of the looped forepart B will be supported directly on the outsole, leaving a smooth flush bottom to the shoe. The prior art shows that if needed, shoemakers knew of other ways of taking care of this edge.

The Kelly patent No. 1,597,685 discloses the elements and combination of claim 2 of the patent in suit and is a prior art reference against the patent in suit, because of its early filing date in the United States Patent Office, even though it was later issued. Milburn Co. v. Davis-Bournonville Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651.

Something more than a change of form is required, and I cannot find that Maccarone, in the claim in suit of the patent in suit, made any real advance in the art, and a higher order of invention is required than to merely carry forward the same idea set forth in earlier patents relating to the same art, or use earlier knowledge to produce substantially the same type of product. Berlin Mills Co. v. Proctor & Gamble Co., 254 U. S. 156, 41 S. Ct. 75, 65 L. Ed. 196; Corona Cord Tire Co. v. Dovan Chem. Corp., 276 U. S. 358, 48 S. Ct. 380, 72 L. Ed. 610; Minerals Separation v. Magma Copper Co., 280 U. S. 400, 50 S. Ct. 185, 74 L. Ed. 511; Powers-Kennedy Co. v. Concrete Co., 282 U. S. 175, 51 S. Ct. 95, 75 L. Ed. 278; Saranac Automatic Mach. Co. v. Wirebounds Patents Co., 282 U. S. 704, 51 S. Ct. 232, 75 L. Ed. 634; American Fruit Growers, Inc., v. Brogdex,

283 U. S. 1, 51 S. Ct. 328, 75 L. Ed. 801; Smith v. Springdale Amusement Park, 283 U. S. 121, 51 S. Ct. 368, 75 L. Ed. 878; Permutit Co. v. Graver Corp., 284 U. S. 52, 52 S. Ct. 53, 76 L. Ed. 163; Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U. S. 69, 54 S. Ct. 586, 78 L. Ed. 1131.

I see no reason for discussing the question of commercial success, as invalidity is so plainly indicated that such success could not serve to validate the patent. Hookless Fastener Co. v. H. L. Rogers Co. (C. C. A.) 28 F.(2d) 814.

I have refrained from considering the question of infringement, as claim 2 of the patent in suit is clearly invalid.

A decree may be entered in favor of the defendant dismissing the complaint on the merits, with costs.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion for the assistance of the court, as provided by rule 70½ of the Equity Rules, 28 USCA following section 723, and rule 11 of the Equity Rules of this court.