24 C.C.P.A.(Patents)

**In re SMOLAK et al.**

**Patent Appeal No. 3748.**

Court of Customs and Patent Appeals.

April 5, 1937.

Clair W. Fairbank, of New York City, for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting the appealed claims, Nos. 21 and 22, in appellants' application for a patent for an alleged invention relating to a "unit of structural material of uneven surface, and particularly," according to the specification, "to a rigid shingle with an irregularly corrugated surface."

The invention is sufficiently described in the appealed claims which read:

"21. A preformed non-inflammable structural unit, adapted for use as a siding slab, shingle, and the like, consisting chiefly of asbestos fibers and Portland cement and including, on the face thereof, elevated portions extending in irregularly longitudinal manner and to irregularly varying elevations, depressed portions alternating with the elevated portions and extending in irregularly longitudinal manner and to irregularly varying depths, and intermediate portions of irregularly sloping surfaces defined between the said elevated and depressed portions, whereby the unit is adapted to reflect light in diffuse manner.

"22. A rigid shingle comprising an end adapted to be exposed on its face to view and another end adapted to be concealed from view in a finished roof assembly, the end adapted to be exposed having a rear surface that is substantially plane and having a face including elevated portions extending in irregularly longitudinal manner and to irregularly varying elevations, depressed portions alternating with the elevated portions and extending in an irregularly longitudinal manner and to irregularly varying depths, and intermediate portions of irregularly sloping surfaces defined between the said elevated and depressed portions and the said end adapted to be concealed from view having susbstantially plane front and rear surfaces."

The references are:

Scharwath et al., 1,404,483, January 24, 1922.
Perry, 1,451,369, April 10, 1923.
Putman, 1,577,150, March 16, 1926.
Fischer, 1,584,023, May 11, 1926.

In its decision, the Board of Appeals made the following observation: "It is noted that applicants have proposed an amendment, changing the term, 'unbroken,' or otherwise modifying each of the claims to substitute *molded,* relating to the irregularities of the surface. The claims are being considered as with these amendments entered."

In explanation of the board's statement, counsel for appellants state that: "In copying these claims, we have inserted the limitation 'molded,' because they were amended after the final rejection to include this word, and the Board of Appeals considered the claims as so amended (R. 18)."

In his brief the Solicitor for the Patent Office states, in substance, that, although as "it formally stands of record in the application file" claim 21 does not include the word "molded," in copying it he had inserted the word because the Board of Appeals had "actually considered the claim as if the word 'molded' had been entered therein * * *."

In their brief counsel for appellants state that, "Prior to the advent of the applicants' invention, there was an unsatisfied demand in the building trade for a fireproof, waterproof shingle, which

would make an inexpensive and durable covering for roofs or walls, which would not be shiny but would diffuse reflected light, which would not be broken or cracked by frost, which would simulate old weather beaten wooden shingles, and which would harmonize with the old Colonial types of architecture. The demand was not satisfied by anything known to the trade or by anything disclosed in the prior patents relied upon by the Patent Office," and contend that, in order to meet the demand, appellants used a mixture of "hydraulic cement and reinforcing asbestos fibres" to "produce a strong, durable, waterproof, and fireproof shingle."

It is conceded that the combination of materials used by appellants is old.

The feature claimed by counsel to lend patentability to appellants' product is defined in the appealed claims as: "* * * elevated portions extending in irregularly longitudinal manner and to irregularly varying elevations, depressed portions alternating with the elevated portions and extending in irregularly longitudinal manner and to irregularly varying depths, and intermediate portions of irregularly longitudinal manner and to irregularly sloping surfaces defined between the said' elevated and depressed portions."

The Scharwath et al. patent discloses a press molded asbestos cement shingle, the "exposed upper face" of which, according to the specification, is "ribbed or corrugated"; the surface being "broken by a plurality of substantially parallel longitudinally extending ridges * * * and by substantially transversely extending parallel curved intersecting ridges * * *, of comparatively small height * * * merely * * * sufficient to make pronounced markings or roughening of the surface." Elsewhere the specification states that one object of the invention is to produce an article which will be free of "the glare ordinarily present in roofs of artificial shingle or tile." The words "press molded" appear only in the claims of the reference.

The patent to Perry relates to a strip shingle in which a substantially homogeneous material is used. In his specification the patentee states that "the impressions are in the main or body portion of the construction strips, which has distributed therethrough the fibrous material, and which is of a homogeneous material capable of receiving and permanently retaining impressions of the desired sort and not merely in any superficial coating on such strips"; that the depressions or grooves may be either straight or curved, and may be of any desired shape, depth, or width; that, "It is, of course, to be understood that in the articles which are the object of my invention the depressions are deep enough to provide of and by themselves the desired appearance of separate unit shingles or tiles without in any way relying on the use of pigmenting or similar materials of various classes to produce the desired effect." After giving various examples, the patentee states that, "Any other desired form of groove or depression may be used"; that they may "be made by pressing the strip between rolls having projections corresponding to the depressions desired," or they may "be made by hand or in any other feasible manner"; and that the depressed or corrugated portions, being of increased density "due to their having been compressed, act as mechanical strengthening members."

The Putman patent is for imitation shake shingles, made of wood, having longitudinal grooves cut therein.

The patent to Fischer is for a fireproof shingle made of asbestos fibers and cement, such as Portland cement, combined together under hydraulic pressure. The upper surface of the butt end (which is described as a "heavy butt end") of the shingle is indented, as shown by the drawings, and as expressed in one of the claims (claim 6), by a "conglomeration of different sized irregular indentations, said indentations decreasing in depth toward the center of the shingle * * *." The feature of "decreasing in depth" is particularly emphasized in Fischer's specification as possessing advantages in both utility and appearance. The patent also teaches that, "In shingles of this nature it has become apparent that a rough artistic or rustic surface is desirable, especially where shingles of different colors are employed so as to provide a very artistic appearance to the house on which the shingles are used."

On behalf of appellants there was filed an affidavit by one Seigle, chairman of the board of directors of Johns-Manville Corporation, which, the affidavit states, is the assignee of the involved application. The affidavit recites certain alleged ad-

vantages of appellants' shingles, and also affirms great commercial success.

It is here argued by counsel for appellants, as it was before the tribunals of the Patent Office, that the Scharwath et al. patent is not a proper reference because the corrugations disclosed therein were not the same as in appellants' application; that as the words "press molded" appeared only in the claims, the board erred in holding that the exposed surfaces of the shingles were press molded; and that, in view of the fact that there was no description or drawings disclosing that the exposed surfaces of the shingles were press molded, the claims of the patent should never have been allowed by the Patent Office.

Whether the Patent Office should have allowed the claims of the Scharwath et al. patent is a matter with which this court is not concerned. The fact remains that the claims of that patent disclosed a press molded asbestos cement shingle as early as January 24, 1922.

Counsel for appellants contend that it is well established that, standing alone, the claims of a patent cannot be used as an anticipation "of an invention," and, as authority for their contention, cite our decision in In re Charles R. Downs and Augustus E. Craver, 45 F.(2d) 251, 253, 18 C.C.P.A.(Patents) 803, 807, wherein this court, citing as authority the case of Minerals Separation North American Corporation v. Magma Copper Company, 280 U.S. 400, 50 S.Ct. 185, 186, 74 L.Ed. 511, inadvertently stated that, "Anticipation is not to be determined from the claims made in the references, but upon the disclosures in the respective specifications."

In the case of Minerals Separation North American Corporation v. Magma Copper Company, supra, the question of infringement was involved, and the issue before the Supreme Court was whether certain claims in letters patent No. 962,-678, owned by the petitioner, were anticipated by an earlier patent, No. 835,120, also owned by the petitioner. It appears in that case that, although the petitioner brought suit for infringement in the District Court of Maine for the infringement of patent No. 835,120, the complaint, with regard to that patent, was dismissed because the patent was about to expire, and the Minerals Separation North American Corporation was permitted to file a supplemental and amended bill of complaint alleging infringement of certain claims in patent No. 962,678. The only issue before the Supreme Court, as we understand its decision, was whether the claims involved in patent No. 962,678 were anticipated by the earlier patent No. 835,120. In discussing that issue, the court, among other things, said: "The question is not what is the *precise scope* of the claims in 835120, but what is disclosed in the specification and made known to the world." (Italics ours.) Accordingly, what we should have said in the case of In re Charles R. Downs and Augustus E. Craver, supra, is that, "Anticipation is not to be determined from the precise scope of the claims made in the references, but upon the disclosures in the respective specifications," which, in a reference patent, would include the claims, the written specification, and the drawings.

In the case of In re Mosher, 79 F. (2d) 911, 913, 23 C.C.P.A.(Patents) 740, 743, we said that "the claims are a part of the references." Accordingly, we are of opinion that the Board of Appeals was right in holding that the words "press molded," contained in each of the claims of the Scharwath et al. patent, were a part of the disclosure of that reference.

It appears that the patent to Scharwath et al. discloses a press molded asbestos cement shingle, the surface of the shingle being "broken by a plurality of substantially parallel longitudinally extending ridges" or corrugations, and "by substantially transversely extending parallel curved intersecting ridges" or corrugations. The material out of which those shingles are made would undoubtedly make them fireproof, although no statement is cited to that effect in the reference. The patentee stated that the corrugations on the exposed surface of his shingle prevented the "glare ordinarily present in roofs of artificial shingle," and also gave the shingle a desirable ornamental appearance.

We deem it unnecessary to discuss in detail the other references of record. It it sufficient to say that, although the patentee Perry uses a different material than that used by appellants and the patentees Scharwath et al. and Fischer, nevertheless he discloses a shingle having depressions, grooves, or corrugations of any desired shape, depth, or width, which might be made by pressing the shingle between rolls

having projections corresponding to the desired corrugations.

The patent to Fischer, as hereinbefore noted, is for a fireproof shingle made of asbestos fibers and cement, combined under hydraulic pressure. The exposed surface of his shingle also has irregular indentations.

It may be said that in discussing the patent to Perry the Board of Appeals said: "What seems important in the Perry disclosure is that a roofing strip designated generally as a strip single [shingle] is made of a fibrous material incorporated in a body material by forming depressions or corrugations therein of variable depths by compression. This is said to result in the formation under each depression of a densified reinforcing section and it is stated that any number of such depressions may be employed and they may be of almost any desired shape. It appears that this patent fully discloses the method of making a roofing strip containing a fibrous element in its composition by molding or compression to form depressions in the nature of corrugations therein without cutting the fibrous material, and it is believed that it would not amount to patentable improvement to form a cement asbestos roof strip, such as those shown in Scharwath et al. or Fischer in the same manner."

Appellants' shingles are attractive, and we have no doubt but that they are commercially successful. However, there is nothing of record to establish that their commercial success is due to any factor other than the design formed by the corrugations, and it should be remembered that appellants' application is not for a design patent.

It being old to make press molded fireproof shingles by combining asbestos fibers and cement, the exposed surfaces of the shingles having indentations, corrugations, or grooves, thereby preventing the glare ordinarily present in roofs composed of artificial shingles, and it being old, as taught by the Perry disclosure, to make strip shingles of homogeneous material, and to form corrugations therein of any desired shape or depth by compression, we are of opinion, as was each of the Patent Office tribunals, that the appealed claims are not patentable over the prior art.

The decision of the Board of Appeals is affirmed.

Affirmed.