28 C.C.P.A. (Patents)

## In re MACFARREN.

### Patent Appeals No. 4465.

Court of Customs and Patent Appeals.
June 30, 1941.

Walter F. Macfarren, pro se.

W. W. Cochran, of Washington, D. C., (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office rejected claims 111, 112, and 113 of appellant's application for a patent relating to high speed rotary flying shears. The claims correspond to claims numbered 12, 14 and 15 of a patent to one Iversen, No. 2,066,565, and were copied for the purpose of interference. The examiner held that they did not read upon appellant's disclosure. Upon appeal to the Board of Appeals his decision was affirmed, and appellant has appealed here. Appellant appears pro se and has filed a typewritten brief but made no oral argument.

Claim 111 is regarded as illustrative and reads: "111. In the method of shearing, the steps consisting in supplying material to be sheared from a feed mechanism to a shear, driving the shear independently of the feed mechanism, limiting the speed of the shear in accordance with the speed of feeding, and supplying sufficient energy to the shear drive to keep it up to the limiting speed thus determined."

Each of the three claims involved calls for driving the shear independently of the feed mechanism. It was the holding of both tribunals below that appellant did not disclose a device which met this limitation in each of the claims.

The invention of appellant's application and the exact issue presented may be best understood, we think, by first considering the Iversen disclosure. Iversen discloses the method of and apparatus for shearing sections from a continuous strip of stock. The shearing mechanism is known as a flying shear and includes two rolls provided with cooperating cutter elements which engage the stock on opposite sides. The stock is fed by rolls run by a motor. The rolls of the flying shear are driven by a second motor. In order to prevent the shear from running faster than the stock, Iversen provides a pump driven by the motor which feeds the stock. This pump, in turn, drives a hydraulic motor which is connected to the shear rolls, it being so arranged that the speed of the shear may be less than that of the hydraulic motor but cannot be greater. The patentee explains that the shear is "started and stopped under manual or automatic control and functions without regard to the speed of the mill stand."

Appellant has disclosed an elaborate machine and he has been allowed 63 claims. However, the present invention relates to a very small portion of it. He has a flying shear driven by a motor which drives the shear at a greater speed than the stock. This motor is positively connected to the pinch rolls and when either set of rolls is placed in engagement with the stock it acts as a brake. He keeps a definite constant relationship between the speed of the stock and that of the shear and the only way that relationship can be interfered with is by stopping the machine and connecting another set of pinch rolls. It is, therefore, seen that there is no independent movement of either the shear or the stock. Appellant points out in his specification the interdependence existing between them.

It was the holding of both tribunals that appellant did not disclose the independent relationship of said parts as required by the claims. The examiner, in his statement following appeal to the board, said: "Applicant's claim 111 (Iversen's 12) calls for 'supplying material from a feed mechanism to a shear, driving the shear independently of the feed mechanism, limiting the speed of the shear in accordance with the speed of feeding'. If we call applicant's rolls * * * his 'feed mechanism', it is not driven independently of the shear since [the] motor * * * is positively geared to and drives both. If we call mill rolls * * * the feeding means (to be consis-

tent with the construction given the preceding claims), then these rolls do not limit the speed of the shear since they are in no way whatever connected thereto. For the same reason claims 112 and 113 (Iversen's 14 and 15) cannot be made by this applicant."

The board agreed with the examiner and had the following to say:

"The examiner has pointed out how claims 112–115 fail to read on applicant's device and we are in agreement with his position in regard to these claims for the reasons assigned by him.

"It is an established practice that when an applicant copies claims from a patent he must show that they clearly read on his device when the claims are read as broadly as their language will permit. Applicant has, in our opinion, failed to show that these claims read on his device.

"Applicant has referred to other patents in his brief and particularly to one of his former patents No. 1,994,107. Applicant appears to complain that he did not secure proper protection in his former patent so as to dominate the Iversen patent. All of these questions have nothing to do with the present situation. The only question before us is whether the claims copied will read on applicant's present application. It is our view that they do not."

In denying a request for reconsideration, the board pointed out that while it had not specifically mentioned claim 111 in its decision, that claim fell "in the same group as claim 112."

In this court, it is urged by the appellant that during the prosecution of his application which ripened into a patent he was refused claims for the invention defined by the claims at bar, and that later the Patent Office allowed Iversen, although not the first inventor, the instant claims.

██ Under our jurisdiction, what appellant was refused in the way of claims in his said patent, or what Iversen obtained, are matters with which we cannot concern ourselves. If appellant was wrongfully denied the claims in his patent application, he should have appealed.

 Appellant has copied the Iversen claims and urges that they are for the same invention, notwithstanding the fact that it seems too clear to require extended discussion that appellant's disclosure does not meet the aforesaid limitation in the claims. We have no power to grant ap-

pellant these claims on the theory that they are for substantially the same invention as were the rejected claims of his application which ripened into a patent. The sole question here is whether or not appellant discloses in the instant application the elements of the claims at bar. We cannot ignore definite limitations, regardless of the fact that they may or may not lend patentability to the claims. Field v. Stow, 49 F.2d 1072, 18 C.C.P.A., Patents, 1502; Atherton v. Payne, 54 F.2d 821, 19 C.C.P.A., Patents, 867.

Appellant has asked us to reverse the decision of the Board of Appeals and to direct the Commissioner of Patents to allow the three claims on appeal in his application so that an interference may be declared between them and the Iversen patent, or in the alternative he suggests that if it is in our power we should award him the claims outright without the necessity of appellant seeking an interference. The latter action is petitioned on the ground that the Patent Office has been unfair to the appellant.

Under the issues as they are presented in this proceeding, there is but one question to decide: Does appellant's disclosure support the claims? We have no authority to set up an interference or to direct that an interference be set up. That is within the jurisdiction of the Patent Office.

For reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.