## MICON v. BURTON–DIXIE CORPORATION.

### No. 8593.

Circuit Court of Appeals, Seventh Circuit.

Feb. 8, 1945.

Samuel Micon and James R. McKnight, both of Chicago, Ill., for appellant.

Walter M. Fuller, of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

Plaintiff charged defendant with infringement of three United States patents to plaintiff numbered respectively 1,771,-185; 1,947,216 and 1,947,217. We shall refer to them respectively in this discussion as patents 1, 2 and 3. Patent 1 was issued July 22, 1930, on an application filed January 21, 1928. Patents 2 and 3 were issued February 13, 1934, on applications filed respectively on February 9, 1931, and October 29, 1931.

The defendant pleaded noninfringement and invalidity. The District Court found the facts specially and concluded as a matter of law that the claims relied upon in each patent "are invalid and therefore have not been infringed by the defendant." A decree followed, dismissing the complaint, and from that decree this appeal is prosecuted.

Patent 1 relates to mattresses and the method of making them. Method claims 1, 3, 7 and 8 are relied upon, and claim 3 is typical. It is set forth in the margin.[1]

1 3. "The method of making a mattress which comprises providing the horizontal sides of the mattress cover with oppositely disposed loops, attaching a

The specification provides that the top, bottom and sides of the mattress cover may be filled with any suitable material but is here illustrated as filled with a plurality of springs, enclosed in cotton batting, which are arranged with their axes vertical. The top and bottom of the mattress are secured together to compress the filling by means of a plurality of cords which are attached respectively to oppositely disposed loops attached to the top and bottom at points spaced longitudinally and transversely thereof. Each of these loops is formed of a single strip of material which is twisted one or more times intermediate its ends. The ends of the strip are then brought together and sewed flat against the inside of the cover. They are also attached to the cover by sewing a strip of material transversely across the first strip, but not across the twisted portion which forms the loop, or the bight.

Both the top and bottom covers are provided with loops as above described, and a cord is attached to each bottom loop in the following manner, before the cover is applied. Each cord is doubled back along its length. The folded end of the cord when thus doubled is passed through the loop and the loose ends of the cord are then threaded through the closed end of the doubled cord so as to form a bight with respect to the loop sewed to the inside of the bottom cover. The loose ends of the cord are then tightened to bring the bight up close to the loop. After all the cords have been thus secured to their respective lower loops, the filling is placed on a table which is provided with a plurality of holes, through which needles operate vertically from the bottom. The mattress cover is applied to the filling in two sections. First the bottom with the sides attached is drawn over the filling to the first row of loops, and the cord on each of these loops is drawn downwardly through the filling by extending the needles upwardly through their respective holes in the table, and through the filling, threading the end of each cord through the eye of its respective needle, and withdrawing the needles downwardly. This process is repeated as to each row of loops and their cords until the bottom has been drawn completely over the filling, and all the cords have been drawn through the

filling. The filling with its attached bottom cover and its attached sides is then inverted on the table and the top cover is applied. The loose ends of the two strands of each cord are then threaded through their oppositely disposed loops sewed to the inside of the top cover, the cord is then tightened to compress the filling including the springs by drawing on the two strands of the cord to the extent desired and they are then tied in such manner as to hold the springs in compressed position. The edge of the top is then sewed to the upper edge of the sides and the rolls on the corner edges are provided in the usual manner to the top and bottom of the mattress.

The inventor said he was aware that many changes might be made without departing from the principles of his invention, and he stated that he did not wish to be limited to the details shown and described in the specification.

The District Court found that the claims relied upon in this patent did not constitute invention over the plaintiff's prior patent No. 1,211,475, issued January 9, 1917, and United States patent No. 1,180,432 to Roberti, issued April 25, 1916.

Plaintiff's former patent was upon a mattress, and not upon a method, although the method is fully described in the specification. In so far as we are able to discern there is no material difference between that and the method here disclosed. It would seem that plaintiff, at the time he secured the earlier patent, was not concerned with securing a patent upon his method, and so far as this record is concerned he made no effort to secure a method patent until the disclosures of his earlier patent had been made public for more than eleven years, during which time he had successfully manufactured and sold to the public the mattress disclosed in his former patent. By deposition, introduced in the trial in the District Court, he was asked how his earlier patent differed from the patent now under discussion. The answer was as follows: "This mattress (referring to the prior patent) is made like ordinary ticks, and to fill it with solid filling, with felt, whereby this mattress can't be done that way, it has springs and you have to go through and make it all in one piece." This is all the information on this

cord to all of the respective loops on one side, applying said side to the filling of the mattress by drawing the free ends of the respective cords through the filling, and applying the other side of the cover to the filling by attaching said ends to the corresponding loops on the latter side."

phase of the case that we have either in the record or in the briefs.

From this statement, and the rest of the record, we are forced to the conclusion that the only material distinction between the method fully described in the earlier patent and the one now in issue lies in the fact that springs covered with cotton batting are used as filling, and in the earlier patent, springs were not mentioned and the filling was referred to in most of the claims as a continuous solid filling of any suitable material. However, the fourth and last claim merely refers to "a filling," which of course includes any kind of a filling, and in the patent now in issue the patentee refers to the springs as "filling." The specification of the preferred embodiment of the prior patent refers to felt, hair and the like, but it was there stated that various changes might be made in the form of construction and arrangement of the parts without departing from the spirit and scope of the invention, and that the form there described was merely a preferred embodiment thereof.

We think it is fair to assume from this record that plaintiff was rather successful in practicing the disclosures of his prior patent, and he was not entitled to a patent on the method therein specifically set forth unless he applied for it within the statutory time, which at that time was two years. See 35 U.S.C.A. § 31 historical note. Shipp v. Scott School Township, 7 Cir., 54 F.2d 1019.

Novelty is negatived by a full description, in the specification of a prior public patent, of the subject covered by an American patent, even though that subject was not covered by any of the claims of the prior patent. Walker on Patents, Deller's Ed., vol. 1, p. 276; Alexander Milburn Co. v. Davis-Bournonville Co., 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651; Minerals Separation North American Corp. v. Magma Copper Co., 280 U.S. 400, 50 S.Ct. 185, 74 L.Ed. 511.

Plaintiff contends that a method patent can only be anticipated by proof of a prior method, relying upon Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 707, 46 L.Ed. 968. We think that case does not support this contention. There the question was whether a process patent could be anticipated by a mechanism, and the Court said:

"* * * A process patent * * * is not anticipated by mechanism which might with slight alterations have been adapted to carry out that process, unless, at least, such use of it would have occurred to one whose duty it was to take practical use of the mechanism described. In other words, a process patent can only be anticipated by a similar process. A mechanical patent is anticipated by a prior device of like construction and capable of performing the same function; but it is otherwise with a process patent. The mere possession of an instrument or piece of mechanism contains no suggestion whatever of all the possible processes to which it may be adapted. * * * If the mere fact that a prior device might be made effective for the carrying on of a particular process were sufficient to anticipate such process, the absurd result would follow that, if the process consisted merely of manipulation, it would be anticipated by the mere possession of a pair of hands.

"True, if the process were the mere function of a machine, another machine capable of performing the same function might be an anticipation; but this is not because a process can be anticipated by a mechanism, but because * * * the mere function of a machine is not patentable as a process at all. * * *"

Neither plaintiff's Patent 1 nor his prior patent, nor the Roberti patent involves a mechanism, and it should be noted that the Carnegie case, and the other authorities we have cited, specifically hold that a process patent may be anticipated by a similar process regardless of whether that anticipating process has been patented. Furthermore, the District Court did not base its ruling on this patent specifically on anticipation. It merely found that the claims involved did not present patentable invention over plaintiff's former patent and the Roberti patent. We interpret this language to mean that whatever material differences, if any, were disclosed by Patent 1 over plaintiff's former patent and the Roberti patent did not amount to patentable invention. We think there was no error in this ruling. Moreover, we think that Patent 1 was clearly anticipated by plaintiff's specification in his former patent No. 1,211,475. While there was no method claim in that patent, yet application in Patent 1 was not filed within the time prescribed by statute.

## Patent No. 1,947,216.

This patent, referred to as No. 2, is entitled "Apparatus for Covering Mattresses." The specification recites that the invention pertains to methods as well as apparatus. However, there are no method claims, although the method of the preferred embodiment is fully set forth in the specification, which leaves no doubt that this apparatus is designed for use in practicing the method described in plaintiff's Patent No. 1, here in issue. There are but four claims in this patent and all are for apparatus. Number 3 is the only one relied upon and is set forth in the margin.[2]

The District Court found as a fact that this claim did not present patentable invention over the following prior art apparatus patents: Beasley No. 473,204; Bagby No. 549,840; Bent Nos. 787,555 and 797,399; Martin No. 1,037,786; Doyen No. 1,448,955; and Wolf No. 1,883,220. The District Court did not specifically find that any one of these prior art patents anticipated plaintiff's Patent 2. True, it cannot be said that any of these prior art patents discloses complete anticipation in every detail, but it is clear that as a whole they disclose that all of the elements of claim 3 were old in the art, and we are convinced that each element of the claim, in combination or otherwise, functions precisely the same and produces no result different from that disclosed in the prior art cited.

## Patent No. 1,947,217.

This patent is styled a mattress tufting machine, and pertains to improvements in apparatus for facilitating the tying of mattresses. All claims are for a machine and claim 2 is relied upon.[3]

The District Court found that this claim did not present patentable invention over the same prior patents referred to in its ruling on Patent 2.

The only material difference between this claim and claim 3 of Patent 2 is that in the former is included the "means for inclining said needles" in order to provide additional clearance for the rotation of the mattress holder. Of course, in claim 3, Patent 2, complete clearance is provided for the rotation of the mattress holder. However, the "additional clearance" provided for in this claim is not intended to, nor does it, aid in placing the covers upon the mattress. It merely assists the operator, if he so desires, in manually supplying external tufts and tying cords to the already completely covered mattress. In accomplishing this the needles ascend unthreaded through the covered mattress, and are then threaded by hand and supplied manually with external tufts. The needles then descend and pull the cords down through the mattress. In so doing the needles become unthreaded and the mattress is turned over by rotating its holder by hand, the needles being inclined for the purpose of allowing the rotation of the holder, whereupon their external tufts are then affixed outside the cover by manually tying the cords at its then top side. In this operation the needles pierce both the top and bottom of the mattress cover, the very thing which plaintiff emphatically condemns, as useless and undesirable, in his Patent 1 and his earlier patent. The feature of inclining the needles for this or any other purpose is not present in defendant's accused structure. However, such rocking movement of normally vertically extending needles was not new. See United States patent to Martin, No. 1,037,786, issued September 13, 1912. True, Martin's needles were not inclined for the purpose of providing clearance but it is not easy under the facts here presented to recognize patentable invention in inclining any mechanical element to provide temporary clearance for another element of the same combination. We think under the circumstances here presented this would amount to nothing more than mechanical skill.

Plaintiff urges that invalidity should not be found on the same prior patents considered by the Patent Office when that office is not clearly shown to have been mistaken. We concur in this conclu-

---

2 3. "A mattress covering apparatus comprising a frame, a mattress carrier horizontally movable thereon, means for rotating said carrier at least 180° about a horizontal axis, and means for causing a plurality of spaced apart needles to rise beneath the mattress and pierce it."

3 2. "In a mattress tying machine, a rotatable holder for holding the mattress during the tying operations, a plurality of needles positioned below the holder, and means for elevating said needles simultaneously for piercing said mattress, said needles being normally held in vertically extending position, and means for inclining said needles to provide additional clearance for rotating movement of said holder."

sion. Of course, all of the prior art patents referred to by us were at one time considered by the Patent Office. However, this record does not disclose that the prior art patents referred to were considered by the Patent Office in connection with the patent here in issue. Under the circumstances here presented we do not feel warranted in disagreeing with the District Court's decree.

Affirmed.