**LOUVER DRAPE, INC., Plaintiff,**

v.

**Edgar K. ORR and Sun Vertikal Blind Company, Defendants.**

**Civ. A. No. 4686.**

United States District Court
W. D. Michigan, S. D.
March 30, 1965.

Harness, Dickey & Pierce, Detroit, Mich., Robert L. Boynton, Lyon & Lyon, Los Angeles, Cal., of counsel, for plaintiff.

Price & Heneveld, Grand Rapids, Mich., Everett L. Huizenga, Grand Rapids, Mich., of counsel, for defendants.

FOX, District Judge.

The crux of this action is the scope of a license agreement.

By stipulation the parties have agreed that the case be tried under Rule 42(b), Federal Rules of Civil Procedure—the trial being limited to those issues raised by the complaint and Paragraph 10 of defendants' answer and counterclaim, seeking a declaration from the Court as to the extent and scope of the license agreement heretofore granted plaintiff, and precisely, whether said license is limited to claim 5 of the patent, as asserted by defendants, or extends to claims 1, 2, 3, 4 and 5, as asserted by plaintiff.

On January 20, 1956, defendant filed an application containing thirteen claims on

a device relating to the opening and closing of vertical glass window blinds, similar to those popularly known as "jalousie windows." The Patent Office rejected these original claims, but subsequent claims 14–17 were allowed. They became claims 1–4 of the patent, 3,061, 005, now held by the defendant. On April 15, 1959, the patent office suggested a claim, number 18, to provoke an interference, and claims 14–17 were held subject to rejection if an adverse decision were rendered in the interference proceeding.

Plaintiff had filed an application on March 6, 1956 with fifteen claims, to which 16 and 17 were added, after which some were indicated as allowable and some were rejected. On April 15, 1959, the patent office suggested the same claim as defendant's number 18 to provoke an interference, and this became claim number 19 of plaintiff's application.

■ An interference is a patent office proceeding resulting from a determination that both parties are claiming invention of the same subject matter.

Rather than pursue the matter through the patent office, the parties agreed to submit the matter to counsel for the parties and abide by their decision as to the party entitled to the patent. A licensing agreement was drawn up at that time which provided in relevant part as follows:

> "III. The party in whose favor priority is determined agrees and hereby does grant to the other party an exclusive license to make, use and sell devices embodying the invention defined by the Count in said interference reserving unto himself the right to make, use and sell devices embodying the invention defined by the interference Count and the rights of both parties shall be assignable. Said license to be royalty free and to extend for the life of any patent which might issue on said invention. The license granted above shall extend to all common subject matter in the above identified patent

applications but shall not extend to non-common subject matter."

It was determined that defendant had priority, and on May 26, 1960, plaintiff filed a concession of priority with the Patent Office.

Plaintiff's contention is that the license grants the right to make, use and sell devices embodying the invention; further, that the claims numbered one through four are merely narrower and more detailed definitions of the claim presented in number five, and therefore the right to make, use and sell the devices embodying the invention included by implication the right to incorporate the features of claims one through four.

The Court finds, under the controlling authority, that the broad interpretation of the license argued for the plaintiff is correct.

The actual device in issue in this suit is a small spring contained within the housings holding the rotary mechanisms. The question to be answered here is whether the suspension of decision on claims one through four pending the outcome of the interference means that these claims are insignificant aside from their connection with the common invention, or whether the fact that they were separated out merely indicates that they were not common to both patent applications, which in fact they were not.

Defendant, in his brief, relies upon two cases to support his position. In re MacFarren, 121 F.2d 468, 28 CCPA 1259 dealt with an applicant's attempt to set up interference counts. The Court stated at pages 469–470 of 121 F.2d:

> "Appellant has copied the Iversen claims and urges that they are for the same invention, notwithstanding the fact that it seems too clear to require extended discussion that appellant's disclosure does not meet the aforesaid limitation in the claims. We have no power to grant appellant these claims on the theory that they are for substantially the same invention as were the rejected claims of his application which ripened into

a patent. *The sole question here is whether or not appellant discloses in the instant application the elements of the claims at bar. We cannot ignore definite limitations, regardless of the fact that they may or may not lend patentability to the claims.* (Citations omitted.)" (Emphasis supplied.)

■ Defendant also cites the case of Application of Knowles, 153 F.2d 462, 33 CCPA 819. That case stands for the proposition that mere equivalency of function is insufficient to justify the making of claims which include definite elements not shown by the application for patent.

However, this Court is bound to follow the Sixth Circuit decision of Anthony Co. v. Perfection Steel Body Co., 315 F.2d 138, in interpreting the license agreement. That case involved the same sort of license agreement, arising from the same set of circumstances, with the exception that the patented invention related to dump trailer mechanisms. The Court there determined that the licensee was not violating the license agreement, since the application under which its rights were claimed contained sufficient disclosure of the devices which it was manufacturing to warrant such production free from claim of infringement.

The Circuit Court of Appeals, speaking through Weick, J., answered the argument for a literal, restrictive reading of the license agreement in the following paragraph:

"We do not think that the license agreement should be so narrowly construed. It is clear to us, as it was to the District Court, that the Wood application disclosed both types of dump trailers. The fact that the drawings attached to the Wood application described only the second type of trailer does not militate against this position. It was not necessary that the patent drawings illustrate every embodiment of the invention, particularly where the specifications are adequate as here.

Chicago Pneumatic Tool Co. v. Hughes Tool Co., 97 F.2d 945 (C.A. 10). In determining the disclosure, resort must be had to the specifications as well as the drawings. Minerals Separation North American Corp. v. Magma Copper Co., 280 U.S. 400, 50 S.Ct. 185, 74 L.Ed. 511; Baldwin Rubber Co. v. Paine & Williams Co., 99 F.2d 1 (C.A. 6). The entire instrument must be construed and not merely part of it. 69 C.J.S. Patents, § 190a."

■ After consideration of the evidence in this case and the arguments of counsel, it is this Court's decision that the plaintiff licensee in the present case is entitled to manufacture structures which incorporate claims 1 through 5 of U. S. Patent No. 3,061,005.