**AERATION PROCESSES, Inc. v. WALTER KIDDE & CO., Inc., et al.**

Civ. A. No. 2890.

District Court, W. D. New York.

Feb. 25, 1948.

Toulmin & Toulmin, of Dayton, Ohio (H. A. Toulmin, Jr., and Clayton E. Crafts, both of Dayton, Ohio, Hugh M. Bennett, of Columbus, Ohio, and John S. Powers, of Buffalo, N. Y., of counsel), for plaintiff.

Samuel E. Darby, Jr., of New York City (Floyd H. Crews, of New York City, J. William Carson, of Belleville, N. Y., and Edwin T. Bean and Bean, Brooks, Buckley & Bean, all of Buffalo, N. Y., of counsel), for defendants.

KNIGHT, District Judge.

Plaintiff sued defendants for infringement of two patents. On the trial it agreed to dismiss the amended complaint as to the two individual defendants and limit the issue to the validity and infringement of Getz Patent No. 2,294,172. The three corporate defendants pleaded the invalidity of this patent.

Defendants Walter Kidde & Co., Inc. and Food Devices, Inc. alleged that they have not been properly served with process and the court is without jurisdiction over them. Both defendants, however, answered and took part in the trial. By so doing they waived their right to question service of process and the court's jurisdiction. Freeman v. Bee Machine Co., Inc., 319 U.S. 448, 453, 63 S.Ct. 1146, 87 L.Ed. 1509; Commercial Casualty Insurance Co. v. Consolidated Stone Co., 278 U.S. 177, 179, 49 S.Ct. 98, 73 L.Ed. 252 (cited with approval in Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd., 308 U.S. 165, 169, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437); U. S. Consolidated Seeded Raisin Co. v. Phoenix Raisin Seeding & Packing Co., C. C., 124 F. 234; Sandusky Foundry & Machine Co. v. DeLavaud, D.C., 251 F. 631; Detroit Motor Appliance Co. v. Taylor, D. C., 4 F.Supp. 529; Automatic Toy Corp. v. Buddy "L" Mfg. Co., D.C., 19 F.Supp. 668.

The patent at issue is a so-called process patent. "A patentable process is a method of treatment of certain materials to produce a particular result or product."

Holland Furnace Co. v. Perkins Glue Co., 277 U.S. 245, 255, 48 S.Ct. 474, 478, 72 L. Ed. 868. Such a patent may be infringed. Walker on Patents, Deller's Ed., pp. 1730-1738.

The application for the patent at issue was signed by the inventor Charles Getz September 20, 1935, and filed in the Patent Office September 26, 1935. It comprised 17 claims, most of which were rejected by the patent examiner as lacking invention over prior patents. After sundry omissions and amendments, seven claims were finally evolved for which a patent was issued August 25, 1942. It is entitled "Process of Making Aerated Food Products."

The three corporate defendants now attack the novelty of this patent. In so doing, they have the burden of proof.

"The issue of the patent is enough to show, until the contrary appears, that all the conditions under which a discovery is patentable in accordance with the statutes have been met. Hence, the burden of proving want of novelty is upon him who avers it. Walker on Patents, § 116. Not only is the burden to make good this defense upon the party setting it up, but his burden is a heavy one, as it has been held that 'every reasonable doubt should be resolved against him.'" Mumm v. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 676, 81 L.Ed. 983.

Before the patent in question was issued an interference proceeding was instituted by Marshall C. Reinecke, involving two claims of the instant patent which read as follows:

"3. The process of producing an aerated product which consists in causing an edible fat-containing liquid to absorb nitrous oxide under pressure and suddenly releasing the pressure so as to yield a highly aerated foamy product.

4. The process of producing an aerated cream which consists in dissolving a quantity of nitrous oxide under pressure in a liquid carrying cream and thereafter releasing the pressure simultaneously therewith forming a product having the consistency of whipped cream."

Reinecke gave evidence of his experiments with nitrous oxide but the examiner of interference awarded priority to Getz

and his decision was affirmed by the Court of Customs and Patent Appeals March 23, 1942. Reinecke v. Getz, 126 F.2d 498, 29 C.C.P.A., Patents 948. The court's opinion was written by Jackson, J., who thus described the Getz invention: "The involved invention relates to a process of producing an aerated food product such as whipped cream. Liquid cream is placed in a closed container, built to sustain pressure, into which nitrous oxide gas under pressure is introduced. The cream by reason of solution with the gas under pressure becomes charged therewith and is then ready to be discharged from the container. As the charged cream is released from the container into the open air the pressure is released and the nitrous oxide gas in the cream expands into the form of minute gas bubbles. The cream filled with the bubbles is the whipped cream. The process is quite similar to that of impregnating water with gas to make charged of sparkling water and discharging the charged water from a syphon."

The Reinecke interference was conducted and paid for by the defendant Food Devices, Inc.

■ The U. S. Supreme Court in Morgan v. Daniels, 153 U.S. 120, 125, 14 S.Ct. 772, 773, 38 L.Ed. 657, said: "Upon principle and authority, therefore, it must be laid down as a rule that, where the question decided in the patent office is one between contesting parties as to priority of invention, the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction."

This doctrine has become established.

"It is true that the decision of the United States Court of Customs and Patent Appeals is not res adjudicata on the issue of priority in this infringement suit, yet under the doctrine of Morgan v. Daniels, * * *, where the evidence before the patent office and the district court is practically the same, much weight should be given to the first trier of fact." Cover v. Schwartz, D.C.S. D.N.Y., 30 F.Supp. 261, 262.

"It is of course true that we are only very rarely justified in reversing a finding of the Patent Office; there has never been any disposition to relax the doctrine of Morgan v. Daniels, rather the contrary." Sinko Tool & Mfg. Co. v. Automatic Devices, Inc., 2 Cir., 157 F.2d 974, 978.

■ Alleging the defense of prior art, defendant Kidde Manufacturing Co., Inc. in its answer cites 19 patents issued prior to the Getz patent. In its brief, however, it discusses only five, viz. the Ashley, Weyde & Matthews, Horsford, Akiyama and Feller patents. Two further patents listed by this defendant are discussed in plaintiff's brief. Considering them in this order, the following facts appear.

(1) Ashley Patent No. 1,548,430, issued August 4, 1925, is entitled "Food Product and Process of Making Same." The patent has 4 claims stating "a process of treating a fluid comprising an ice cream mix" and making "a new product * * * from a fluid at or near the freezing temperature thereof." The first two points mention "a suitable gas"; the last two merely "gas". In the preceding description there is mention of "compressed air or carbonic acid gas" but no mention of nitrous oxide. The claims speak of "a suitable gas under pressure", "discharging the fluid", "an ice cream mix impregnated with gas, in puff form", and "cream impregnated with gas, expanded in volume and solidified."

(2) Weyde & Matthews Patent No. 88,-348, issued March 30, 1869, the inventors state: "Our improvement consists in incorporating, in artificially, aerated drinks, nitrous oxide, or laughing-gas, under pressure, in the same way that, thus far, carbonic acid alone has been introduced * *. We also add, sometimes, a certain quantity of carbonic-acid gas, by which latter addition we, at the same time, communicate to it the pleasant pungent taste peculiar to carbonic-acid drinks." The two claims comprise (1) a solution of sugar or its equivalent with nitrous oxide "for medicinal purposes" and (2) a combination of such solution with nitrous oxide, carbonic-acid gas and "any flavoring ingredient, forming an exhilarating substitute for the injurious, irritating alcoholic drinks."

(3) In Horsford Patent No. 104,311, issued June 14, 1870, there is only one claim which reads: "The preparation of medic-

inal beverages or refreshing drinks, composed of the liquid acid phosphate diluted with water * * * combined, or not, with other flavoring substances, and charged with carbonic-acid or nitrous oxide gas or other gas or mixture of gases in bottles or other closed vessels or apparatus."

(4) In Akiyama Patent No. 1,538,369, issued May 19, 1925, it is said: "This invention relates to an improved method of preserving meats, milk, vegetables, fruits and other edibles, and has for its object their preservation in fresh state for a comparatively long time, free from alteration either in colour or taste, the tissues or fibres remaining soft." Although the patent mentions nitrous oxide, which is to be used under pressure, the sole purpose of the patented process is to preserve food. It does not comprise aeration.

(5) Feller Patent No. 1,912,439, issued June 6, 1933, is entitled "Beverage Manufacture." The inventor states: "This invention relates to an improved milk beverage or the like, and an improved process of producing such a beverage." The only beverage mentioned in the two claims is "milk" and "whole milk", which is to be carbonated by the use of "carbon dioxid" under pressure. The patent does not mention nitrous oxide.

(6) Kirkpatrick Patent No. 1,329,246, issued January 27, 1920, is entitled "Ice-Cream-Freezing Process." It includes only two claims. The first mentions "a sterile inert gas", the second "carbon dioxid gas." These gases are to be forced into a container to replace the air therein and to commingle with the ingredients "as they pass from a liquid to a solid or plastic condition." There is no mention of nitrous oxide.

(7) Roush Patent No. 1,852,267, issued April 5, 1932, is entitled "Method of Preparing Whipped Cream." The whipped cream is produced solely by air bubbles. There is no mention of nitrous oxide.

The patent examiner in rejecting most of the original 17 claims in the Getz application named the Weyde, Akiyama, Feller and Roush patents. Defendants in their brief, however, state that the Ashley pat-

ent was not cited. It contains no mention of nitrous oxide.

The essential novelty of the Getz patent as claimed by plaintiff is the use of nitrous oxide gas to aerate food products containing cream. This gas had long been used by dentists as an anaesthetic. Other uses are mentioned in the patents above discussed. It is claimed, however, that inventor Getz first discovered the use in question.

At the trial of this action, testimony for plaintiff was given by its president George Frederick Smith, professor of chemistry at the University of Illinois. He claimed to be a recognized expert in processing food products and teacher of inventor Getz and that the latter conceived the idea that nitrous oxide could be used to aerate food products.

Although Prof. Smith, as plaintiff's president, is financially interested in this suit, his following testimony was not refuted. He said: "It was not suspected nitrous oxide would be soluble in a fat such as butter fat, even though the common knowledge that it was soluble in water was known and was recorded in the literature. One would reason from his chemical knowledge if it were soluble in serum of the cream it most likely would not be soluble in the fat, and therefore it was really a very unusual discovery and disclosure that it was soluble in fat, and more important nitrous oxide was found to be essentially equally soluble in fat as in serum, which is an important factor in connection with this Getz process."

Defendants urge that this new use of nitrous oxide is not patentable and cite two cases. The first, Old Town Ribbon & Carbon Co. v. Columbia R. & C. Mfg. Co., 2 Cir., 159 F.2d 379, 382, involved a counterclaim for infringement of a patent for making reproductions of written or typed matter. The District Court dismissed the complaint and granted the counterclaim. The Circuit Court on appeal reversed judgment and remanded the cause for further proceedings.

The defendants in their brief quote from the opinion of C. J. Hand in that case, but fail to quote the following: "As we have said in earlier cases, this does not mean that very slight physical changes in a 'ma-

chine' a 'manufacture' for (sic) a 'composition of matter' may not be enough to sustain a patent; the act of selection out of which the new structure arises, is the determinant, and small departures may signify and embody revolutionary changes in discovery; but the law does not protect the act of selection per se, however meritorious, when it is not materially incorporated into some new physical object * * *. It is scarcely necessary to add that the claims in suit are not for an 'art' or 'process.' "

The second case on which defendants rely is Morton v. New York Eye Infirmary, C.C., 17 Fed.Cas.No.9,865, decided in 1862 by the Circuit Court, S.D.N.Y. It was a suit for infringement of a patent "for the well-known and valuable discovery of the effects of sulphuric ether in producing nervous quiet and insensibility to pain, especially during surgical operations." Page 880 of 17 Fed.Cas. The trial resulted in a verdict for defendants. In denying the motion for a new trial, Shipman, D. J., said: "In its naked ordinary sense, a discovery is not patentable. A discovery of a new principle, force, or law, operating or which can be made to operate on matter, will not entitle the discoverer to a patent."

"Neither the natural functions of an animal upon which or through which it may be designed to operate, nor any of the useful purposes to which it may be applied, can form any essential parts of the combination, however they may illustrate and establish its usefulness." Page 884 of 17 Fed.Cas.

The Getz invention does not involve the application of nitrous oxide gas to the human body but its compression into an article of food. It therefore differs essentially from Dr. Morton's use of sulphuric ether.

The law applicable to the Getz patent has been well summarized in Lincoln Stores v. Nashua Mfg. Co., 1 Cir., 157 F.2d 154 at pages 162, 163, as follows: "A mere aggregation of a number of elements known to the prior art, each of which performs the same function for which it was previously utilized and which produces no new result or no new cooperative function, does not constitute a patentable invention. * * * But the fact that a new combination of old elements produces a new and beneficial result, hitherto unattained, merits consideration as evidence of invention. * * * And a substitution which involves a new mode of construction, or develops new uses and properties of the article formed, may amount to invention. * * * A patentable combination may be comprised of elements that are all old or all new, or partly old and partly new. * * * Where none of the patents in the prior art disclose all the elements of the patent in issue, they cannot be combined for that purpose, * * *.

An inventor cannot be denied the rights derived from a patent merely because he has combined elements, all of which were known to the prior art, if he has produced something involving novelty and utility. * * * A finding of invention may be warranted where the patentee combines features, even though all of them are known to the prior art, which produce a new result, especially where that combination enjoys marked commercial success. * * * Amory's combination produced a new result, although it may have been composed solely of known ingredients, and there is evidence that this result was not expected by the art. Amory's blanket was eagerly received by the consuming public. The Amory patent meets all the tests set forth by the cited cases."

Many decisions are cited in the preceding opinion, and such opinion is cited as authority by Judge Learned Hand in the recent case of Gelardin v. Revlon Products Corp. et al., 2 Cir., 164 F.2d 910, 911. He said: "Invention is the act of putting together elements—all usually old—which gives them an added value; and the combination must be one for which exceptional imaginative talent is necessary. How exceptional this must be is another matter; but it would be as absurd to maintain that the substitution of a new material can never require originality, as that it could never make a profitable advance."

The Getz invention did not result from a mere deduction from the known properties of nitrous oxide gas. It required much experimenting. "In chemistry one cannot anticipate a result. A result may be obtained only by experiment." United

Chromium v. International Silver Co., D.C., 53 F.2d 390, 393, modified but affirmed, 2 Cir., 1932, 60 F.2d 913. "Chemistry is essentially an experimental science, and chemical prevision is as impossible to-day, in spite of the accumulation of the great knowledge, as it was in former times." Gen. Electric Co. v. Laco-Philips Co., 2 Cir., 233 F. 96, 103. As Mr. Justice Holmes said in Minerals Separation v. Magma Co., 280 U.S. 400, 403, 50 S.Ct. 185, 186, 74 L.Ed. 511: "There is no 'of course' as to what nature can do, except as proved by observation and experiment."

Defendants have made no convincing proof that the results obtainable by the Getz patent were known to the prior art or could have been predicted by chemists expert in this particular field. The discovery of Dr. Getz revealed "the flash of creative genius not merely the skill of the calling." Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 62 S.Ct. 37, 41, 86 L.Ed. 58.

In B. G. Corp. v. Walter Kidde & Co., Inc., 2 Cir., 1935, 79 F.2d 20, Judge Learned Hand said: "All Compositions are made of the same substances, retaining their fixed chemical properties. But the elements are capable of an infinity of permutations, and the selection of that group which proves serviceable to a given need may require a high degree of originality. It is that act of selection which is the invention; and it must be beyond the capacity of common-place imagination." Page 22 of 79 F.2d.

The Getz invention apparently meets this test. It met a general need and has become a great commercial success. Its validity was not questioned by any of the corporate defendants until the instant action was brought. They tried to obtain licenses from plaintiff to use the patent. Moreover, defendant Food Devices, Inc. instituted and defrayed the expenses of the Reinecke-Getz interference and never made a motion before the Patent Office to dissolve the Getz patent on the ground of lack of patentability over the prior art.

For the reasons above stated, Getz Patent No. 2,294,172 must be deemed good and valid in law.

■ Has there been any infringement of this patent as alleged by plaintiff? The two individual defendants are out of the case.

The amended complaint alleges that defendants within six years prior to the commencement of this action have "unlawfully manufactured, sold and used and are now manufacturing, using and selling products made according to and employing" the Getz patent. This action was commenced by the filing of the complaint April 26, 1946. Federal Rules of Civil Procedure, Rule 3, 28 U.S.C.A. following section 723 c. The time interval involved, therefore, is from April 26, 1940, to April 26, 1946.

Defendant Kidde Manufacturing Co., Inc., in its counterclaim, alleges that it "manufactures and sells or offers for sale within the jurisdiction of this court for use within (its) jurisdiction * * * a cream whipping device known as a 'Whippets' machine."

Plaintiff offered some proof that defendant Food Devices, Inc., during the interval in question, manufactured, sold and distributed a certain "Nu-Whip" device for whipping cream. Its witness Cummings, manager of its Buffalo, N. Y. office, testified that, in the summer of 1943, he had seen a "Nu-Whip" device in operation at a drug store in that city. He also testified that he had recently seen the "Whippets" device in operation at a soda bar in Buffalo, N. Y. Plaintiff also introduced in evidence printed advertisements describing and illustrating these two devices. They are similar in outward appearance to the Getz device.

The printed advertisement of "Nu-Whip" bears the name "Food Devices Incorporated—60 East 42nd Street, New York City." Donald L. Frost, secretary of that corporation, testified on a pre-trial deposition that it was not then engaged in the manufacture of "Nu-Whip" aerated food product machines and had not been since 1941. Plaintiff, however, put in evidence a copy of a sale agreement between Food Devices, Inc. and Kidde Manufacturing Co., Inc. made September 14, 1945. This agreement recites that Food Devices, Inc. "is engaged in the business of buying

and selling bulbs containing nitrous oxide useful for aerating cream and of making and selling aerating and dispensing devices utilizing said bulbs." Its bill of sale of the "Whippets" trademark and of its patented aerating and dispensing device to Kidde Manufacturing Co., Inc. is also dated September 14, 1945. These documents were not disputed by defendants.

The printed advertisement of "Whippets" bears the name "Kidde Manufacturing Co., Inc.—Bloomfield, N. J. U. S. A." This corporation, in its answer, alleges that it is a Delaware corporation and is a subsidiary of and·wholly owned by Walter Kidde & Company, Inc. It appears that the latter manufactures fire extinguishers. There is no evidence that it has made "Nu-Whip" or "Whippets."

It is unnecessary to consider the structure of these two cream-whipping devices. Plaintiff's counsel in their reply brief assert: "The patent in suit is a process patent and it is not claimed that the structure of Defendants' devices is an infringement of the Getz process patent." A variation in the details of defendants' devices would constitute no defense for they "do not avoid infringement of the method by varying the details of the apparatus by which they make use of it." Smith v. Snow, 294 U.S. 1, 20, 55 S.Ct. 279, 287, 79 L.Ed. 721.

Plaintiff's case may be considered as summarized in the following words of its counsels' brief: "The avowed purpose of the Defendants in making and selling their devices is to provide a container and nitrous oxide for whipping cream, as is shown conclusively by the advertisements of Kidde Manufacturing Company * * *; the advertisements of Food Devices, Inc. * * *; the deposition of Walter Freygang, president of Walter Kidde & Company, Inc., to that effect * * *; and the Stipulation of the parties including Exhibits 1 through 6 attached which are advertisements and press releases of Kidde Manufacturing Company * * *."

Walter H. Freygang in his deposition testified thus:

"Q. * * * what is whippet? A. Whippet is the matter of the foaming of cream by means of nitrous oxide gas.

"Q. Do you mean that Kidde Manufacturing Company makes a device for that purpose? A. They do.

"Q. It is not engaged in producing the product itself, is it? A. By the product, if you mean the container and the bulb, yes; if you mean by product the cream, no.

"Q. * * * When you say cream, do you mean edible cow's cream? A. I believe that is the conventional term of cream.

"Q. Is that what you mean to convey? A. Yes."

Plaintiff's Exhibit 5 is a photostat of a carton which bears the words "Whippets for Whipping Cream." It also contains the name "Kidde Mfg. Co., Inc." and these instructions: "Whippets Are For Use Only in Nu-Whip Machines! * * * Nu-Whip Machines Should Be Operated Only With Whippets. * * * Each Contains 0.3 oz. Net of Nitrous Oxide."

Mr. Freygang further testified:

"Q. * * * Is Kidde Manufacturing Company at the present time manufacturing Nitrous Oxide bulbs similar to those? A. Yes.

"Q. Marked 'Plaintiff's Exhibit 5'? A. Yes.

"Q. And to whom do they sell them? A. To distributors and users.

"Q. In general commercial practice? A. That is correct.

"Q. Do you know for what purpose they are sold? A. Yes.

"Q. For what purpose? A. Whipping cream.

"Q. For any other purpose? A. We don't specify what purpose they use them for.

"Q. Were these bulbs referred to as 'Plaintiff's Exhibit 5' specifically designed for the purpose of whipping cream in whipping cream dispensers? A. Yes, sir * * * Excuse me. The bulb is not specifically designed. Gas was put in for that purpose. The bulb design is very old. Whippets cream dispensers were designed to use the bulb, not the bulb to fit into the dispenser."

Plaintiff does not claim that the sole manufacture and sale by any of the defendants of a machine for producing whipped cream is an infringement of the Getz patent. It does not claim any infringement in the sole manufacture and sale of the unpatented bulbs. Plaintiff does make the following claim in the reply brief: "Defendants manufacture, and provide in one neat package, the complete device for practicing the Plaintiff's process, complete with instructions as to how to operate it and formulae for the ingredients to produce the desired product. Thus, the public is invited to infringe the process and is provided with every element necessary to infringe it."

It has been held in earlier cases that "where a person furnishes a machine, composition of matter or other article, which is particularly adapted to be used in performing a patented process, and which the person furnishing the same, intends shall be thus used, that person is liable as a contributory infringer, for any infringement which afterward occurs in accordance with his intention (citing cases)." Walker on Patents, Deller's Ed., Vol. 3, p. 1767.

Defendants, however, to refute this doctrine cite Carbice Corp. of America v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819, and Mercoid Corp. v. Minneapolis-Honeywell Regulator Co., 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396. The Carbice case was followed in Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371.

In these three cases, the alleged infringers sold only an unpatented article. It is not stated that they gave any specific directions for its use in connection with the plaintiffs' patents. There is no conflict in them with the rule as stated in Walker on Patents, supra. Each recognizes the right of recovery for contributory infringement. The question here is whether defendants, Walter Kidde & Company, Inc. and Food Devices, Inc., are contributing infringers.

In Detroit Lubricator Co. v. Toussaint, D.C.N.D. Ill. E.D., 57 F.Supp. 837, the court, denying a motion to dismiss the complaint as to the charge of contributory infringement, said (page 838 of 57 F.Supp.): "The doctrine of contributory infringement is still an important element of patent law.

It has been subjected to considerable interpretation and its field has been somewhat limited by the most recent decisions which defendant cites (citing cases). * * * The doctrine is still existent and may be urged by any injured party; whether it applies to any case must be determined from the facts presented."

The court after quoting the definition of contributory infringement given in Walker on Patents, Vol. 3, sec. 507, continues: "Before one can be held for contributory infringement, he must knowingly have done some act without which the infringement would not have occurred; at least, either he must know that the element he sells will be used in the patented combination or the element must be adapted for no other use."

There is evidence that, when this action was commenced, defendant Kidde Manufacturing Co., Inc. was making devices and nitrous oxide bulbs and selling them to the public with directions for a use which infringed the Getz process patent. As said in Metallizing Engineering Co., Inc. v. Metallizing Co. of America, D.C.S.D.N.Y., 62 F.Supp. 274, 277: "While thus they do not practice the process, they knowingly cause and promote its practice. They not only make possible the commission of the tort: they become active and joint participants in it. They do not contribute, in the ordinary sense; they jointly infringe."

There is no proof that, when this action was commenced, defendant Food Devices, Inc. was guilty of or threatened to do any such act and the same can be said of defendant Walter Kidde & Co., Inc., unless its guilt can be predicated on the fact that it is sole owner of its subsidiary corporation, the defendant Kidde Manufacturing Co., Inc.

"The whole problem of the relation between parent and subsidiary corporations is one that is still enveloped in the mists of metaphor * * *. We say at times that the corporate entity will be ignored when the parent corporation operates a business through a subsidiary which is characterized as an 'alias' or a 'dummy.' All this is well enough if the picturesque-

ness of the epithets does not lead us to forget that the essential term to be defined is the act of operation. Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent. Where control is less than this, we are remitted to the tests of honesty and justice." Berkey v. Third Ave. Ry. Co., 244 N. Y. 84, 95, 155 N.E. 58, 61, 50 A.L.R. 599; Matter of Ryan, 291 N. Y. 376, 405, 52 N.E.2d 909.

In the instant case there is no evidence that the parent corporation actually operated and exercised dominion over the subsidiary corporation in the latter's patent infringement.

Whatever remedy plaintiff may have against defendant Kidde Manufacturing Co., Inc., depends upon its own use of the Getz patent. In Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 669, 64 S.Ct. 268, 273, 88 L.Ed. 376, the court said:

"Where there is a collision between the principle of the Carbice case [283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819] and the conventional rules governing either direct or contributory infringement, the former prevails.

"The result of this decision, together with those which have preceded it, is to limit substantially the doctrine of contributory infringement. What residuum may be left we need not stop to consider. It is sufficient to say that in whatever posture the issue may be tendered courts of equity will withhold relief where the patentee and those claiming under him are using the patent privilege contrary to the public interest."

Defendant Kidde Manufacturing Co., Inc. moved to amend its answer and counterclaim to set forth the following allegation: "8(a) That the patents in suit, as well as other patents owned by plaintiff, have been improperly used by plaintiff to derive its profit not from its patents, but from unpatented supplies with which they are used; wherefore, plaintiff is barred from the enforcement of its patents."

This motion was denied and the issue decided on its merits. See opinion of this court, dated October 21, 1947. 77 F. Supp. 647. Before the close of the trial, this defendant offered in evidence a copy of plaintiff's license agreement with its so-called "points." This defendant rested without offering further proof of monopoly. The court held that the agreement did not violate the Sherman or Clayton Act, 15 U. S.C.A. §§ 1 et seq., 12 et seq. It was produced by plaintiff at this defendant's request. The amendment was therefore unnecessary. Rule 15(b) provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In Libbey-Owens-Ford Glass Co. v. Sylvanian Industrial Corp., 2 Cir., 154 F.2d 814, 815, certiorari denied, 328 U.S. 859, 66 S.Ct. 1353, 90 L.Ed. 1630, it is said: "it is quite clear that the defendant (sic) of unclean hands need not be pleaded, but, since it goes to the heart of the plaintiff's case, may be taken up without affirmative claim therefor."

Defendants in their brief request a reconsideration of the motion of defendant Kidde Manufacturing Co., Inc. to amend its answer. No motion has been made to reopen the case to offer further proof of plaintiff's misuse of the Getz patent. The issue, on the evidence presented, has been fully considered in the court's opinion dated October 21, 1947.

The prayer of plaintiff in its amended complaint is granted as follows:

1. Plaintiff may have judgment declaring its Getz process patent No. 2,294,172, issued August 25, 1942, good and valid in law and that plaintiff is vested with all right, title and interest therein.

2. Plaintiff is entitled to an accounting by defendants Kidde Manufacturing Co., Inc., and Food Devices, Inc. of all profits, gains and advantages obtained by them and of the damage suffered by plaintiff as a result of their infringement of said patent at any and all times after April 26, 1940.

3. Plaintiff is not entitled to any permanent or preliminary injunction against the defendants Food Devices, Inc. and Walter Kidde & Co., Inc.

4. Plaintiff is entitled to some preliminary and permanent injunctions against de-

fendant Kidde Manufacturing Co., Inc. It is not entitled to enjoin this defendant from making and selling nitrous oxide bulbs to any person, including plaintiff's "points". Plaintiff, in its brief, does not ask for an injunction against the sale of the "Nu-Whip" and "Whippets" devices. The patent infringement is accomplished by the sale of these devices together with the nitrous oxide bulbs and the giving of instructions as to their use. Such use is an infringement of plaintiff's process patent. Plaintiff, therefore, is entitled to a preliminary and a permanent injunction enjoining this defendant from selling and delivering said devices and bulbs in the same package and from giving any instructions or directions, oral or written, concerning the use of said bulbs in connection with any of said devices.

5. Plaintiff has not alleged that it has suffered any specified amount of damages and has not proved any damages. What damages, if any, it may have suffered can be determined only upon an accounting. The court, therefore, cannot now award the treble damages which plaintiff seeks, 35 U.S.C.A. § 67.

Defendants' request for attorneys' fees is denied. Findings hereon may be submitted.