29 C.C.P.A.(Patents)

## REINECKE v. GETZ.

### Patent Appeal No. 4557.

Court of Customs and Patent Appeals.

March 23, 1942.

Pennie, Davis, Marvin & Edmonds, of New York City (A. A. Arnold, of New York City, and C. M. Fisher, of Washington, D. C., of counsel), for appellant.

Albert Grobstein, of Washington, D. C., and W. S. McDowell, of Columbus, Ohio (George E. Stebbins, of Pittsburgh, Pa., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention of the subject matter in issue to appellee.

The counts of the interference, which were suggested by the Primary Examiner for purposes of interference, read as follows:

"1. The process of producing an aerated product which consists in causing an edible fat-containing liquid to absorb nitrous oxide under pressure and suddenly releasing the pressure so as to yield a highly aerated foamy product.

"2. The process of producing an aerated cream which consists in dissolving a quantity of nitrous oxide under pressure in a liquid carrying cream and thereafter releasing the pressure simultaneously therewith forming a product having the consistency of whipped cream."

The involved invention relates to a process of producing an aerated food product such as whipped cream. Liquid cream is placed in a closed container, built to sustain pressure, into which nitrous oxide gas under pressure is introduced. The cream by reason of solution with the gas under pressure becomes charged therewith and is then ready to be discharged from the container. As the charged cream is released from the container into the open air the pressure is released and the nitrous oxide gas in the cream expands into the form of minute gas bubbles. The cream filled with the bubbles is the whipped cream. The

process is quite similar to that of impregnating water with gas to make charged or sparkling water and discharging the charged water from a syphon.

The interference arises between two applications for patent, that of appellant Serial No. 73,486, filed April 9, 1936, a division of an earlier application Serial No. 36,338, filed August 15, 1935, and appellee's application Serial No. 42,225, filed September 26, 1935, a continuation of his earlier and abandoned application Serial No. 710,236, filed February 8, 1934. Appellant is therefore the junior party and had the burden to establish priority of invention by a preponderance of evidence.

Both parties filed preliminary statements and took testimony.

The Examiner of Interferences, after analyzing the record of appellant, held that the evidence offered to corroborate that of appellant failed "to show that the invention was fully disclosed by him [appellant] to any of the witness[es] as of a date prior to the senior party's record date". The examiner therefore held that appellant could not prevail.

While the Examiner of Interferences stated that it was unnecessary to do so, he did briefly discuss the record made on behalf of appellee "in view of the possibility that a different viewpoint may be adopted on appeal". The examiner then stated it had been convincingly established that appellee reduced the invention to practice no later than the month of October, 1933, and that appellant in his brief conceded that appellee had reduced the invention to practice on September 29, 1933.

The Examiner of Interferences on the entire record awarded priority of invention of the subject matter in issue to appellee, on the ground that he was the first to conceive and the first to reduce the invention to practice.

After an appeal had been taken to the Board of Appeals, a decision of the Commissioner of Patents, duly made in response to a petition praying that the interference be reopened for the purpose of enabling appellee to present evidence attacking the record of appellant in respect to Exhibits 1, 2 and 13, states as follows:

"The allegations are of such a nature that it is considered advisable that the parties be given the opportunity of presenting testimony relative thereto. Since the nature of the testimony to be taken is such that it could not alter the award of priority entered by the Examiner of Interferences, the case will not be remanded to him but the testimony will be admitted for consideration on appeal.

"In connection with this testimony the Board of Appeals will, of course, consider the Commissioner's notice of August 21, 1933, published in 434 O.G. 1.

"In the absence of express permission, the testimony must be confined strictly to the matters set forth in the petition and the supporting affidavits."

No motion was made by appellant to reopen the case for any purpose.

In accordance with said decision of the Commissioner of Patents testimony was taken and exhibits received in evidence on behalf of appellee, and evidence received in purported rebuttal on behalf of appellant.

Subsequently a motion to suppress certain designated portions of the evidence taken on behalf of appellant, in the subsequent proceedings, was made by appellee on the ground that the said evidence was not within the scope of the matters set forth in the said petition of appellee and "was an attempt to re-take and patch up Reinecke's prima facie case as presented before the Examiner of Interferences".

In its decision the Board of Appeals disposed of the motion in language as follows: "Motion has been made to suppress parts of the testimony taken on reopening in behalf of Reinecke in that it goes beyond the scope of showing specifically directed by the order reopening the record. We find this to be true and have given no consideration to parts of that record except that relating to Reinecke's Exhibits 1, 2 and 13."

In dealing with the direct appeal, the Board of Appeals set out in fairly detailed fashion, but thoroughly correct and adequate, the record on behalf of appellant. The testimonial record is long and we adopt for convenience and in the interest of brevity the language of the board which reads as follows:

"Generally, the history of the invention, as asserted by Reinecke in the original record, is that in the early part of 1929, while upon a special diet involving considerable milk and cream, he conceived the idea of inflating the cream to convert it into a kind of whipped cream condition by impregnating it with carbon dioxide gas under pressure and then releasing it. He alleges that he performed this experiment in a conven-

tional seltzer bottle of the self-carbonating-type, that is, where a small ampule of liquid carbon dioxide gas was released into the bottle after having the cream placed therein. Reinecke states that the cream was converted to an expanded or whipped like condition but that it 'tasted sour-like'. This may have been an original discovery on the behalf of Reinecke although it seems indicated in the record that such effect was known. However, it is entirely irrelevant to the issue since each count definitely requires employment of nitrous. oxide gas rather than carbon dioxide gas. Reinecke asserts further that at that time he conceived the idea of employing such kind of gas that would not impart the sour taste to the cream and hit upon the idea of phoning the Ohio Chemical Company office in New York City for information concerning possible gases that might be suitable in place of carbon dioxide and that the. company suggested nitrous oxide gas was similar. No direct weight need be given to this item since it was wholly a mere oral uncorroborated statement by Reinecke. Reinecke asserts that he then requested 'a chap that he met several times prior to his getting this data for me' to go to the Library apparently in Brooklyn, New York where Reinecke resided, to obtain information about nitrous oxide. At this point the three-paged document designated Reinecke Exhibit 1 was introduced as being the memorandum produced by the aforesaid chap. The document is undated and merely contains some memorandum concerning general properties of carbon dioxide $CO_2$ and nitrous oxide $N_2O$. The alleged chap of 1929 was not produced so that so far as merits of Exhibit 1 as of that date are concerned, we hold that it is entirely uncorroborated and irrelevant to the definite terms of the counts, there being no reference in Exhibit 1 to cream. It may be noted at this point that it was admitted by Reinecke in the evidence taken upon reopening that this document was not prepared in 1929 at all or by the alleged chap, but in 1937 after this interference was started and by another person.

"We have carefully considered the remainder of Reinecke's original record and find similar lack of corroboration throughout the same of specifically inflating or whipping cream by means of nitrous oxide. We have carefully reviewed Reinecke's record giving consideration to each witness. It seems possible but rather un-certainly established that Reinecke had manufactured some three or four brass cylinders in which he claims to have experimented with processes of whipping cream it seems promiscuously with carbon dioxide with hints of use of nitrous oxide. Reinecke claims to have secured nitrous oxide from a couple of Dentist Supply stations and to have purchased a cylinder of liquefied nitrous oxide gas such as sold to dentists. Corroboration as to all of this is found quite meager and uncertain as to whether it was employed in whipping cream. It is clear from the testimony of all parties concerned that either they did not take interest in what Reinecke was doing or because he possibly kept the idea secret, that none of the witnesses called testified as to the particular requirements of the counts, that is, the association of nitrous oxide with the whipping of cream. Only one witness—Roisman—broadly states that Reinecke at one time produced some whipped cream from a 'gadget' and placed it upon a piece of pie."

■ The board further in its decision analyzed in greater detail the evidence produced on behalf of appellant intended to corroborate his story. We do not deem it necessary to discuss this portion of the decision. It suffices to state from a careful examination of the record that we are in complete accord with the conclusion of the board which stated: "We accordingly hold that proofs submitted on behalf of Reinecke totally fail to corroborate any conception of the details of the counts by him prior to the senior party's record date. He is therefore unable to prevail."

It is clear to us that on the evidence as it was presented to the Examiner of Interferences no error was committed by him in granting priority of the involved subject matter on appeal. We further hold that the evidence contained in the direct appeal fully justified the board in affirming the examiner.

With respect to the testimony taken on reopening the proceedings it was conclusively shown by appellee that Exhibit 1 could not have been written in 1929 for the reason that the watermark appearing in the paper was not employed by any paper manufacturer until 1933 or 1934. At the subsequent hearing appellant admitted that the said exhibit was not written until 1937 and that his former testimony that it was

written in 1929 was not correct. We are not impressed with the excuses made by appellant for the admitted error.

Exhibit 1 admittedly written in 1937 notes the same similarity between the physical properties of carbon dioxide and nitrous oxide and also cites Thorpe, an authority on applied chemistry, all of which appears in Exhibit 2. Exhibit 2 seems to copy over, and to some extent depends upon, data shown in Exhibit 1. No reference is made to whipping cream in Exhibit 2 and it lacks utterly any corroboration.

With respect to Exhibit 13 the board stated as follows: "In connection with Reinecke's Exhibit 13, Getz endeavors to prove that the memorandum furnished by Dr. Bernstein while dated September 24, 1933, is upon a letter form sheet bearing a certain street address and a telephone number which was not connected and placed in service until March 19, 1934. An elaborate explanation was presented upon behalf of Reinecke in this connection. Like the explanation of the situation as to Exhibit 1, the situation in explanation of the apparent unreasonable use of letter heads having street address and telephone number not actually in use until later, seems highly improbable although of course it would possibly not be impossible."

We are of opinion that the said Exhibits 1, 2 and 13, even without the doubt cast upon their validity during the second taking of testimony, are insufficient together with the rest of the record to entitle appellant to an award of priority. Considered in the case on the entire record we think they are worthless.

There can be no doubt that appellant in his so-called rebuttal testimony went far afield from the matters upon which evidence was to be adduced after the case had been reopened. It serves no useful purpose here to set out what the board would not consider. It suffices to say that appellant attempted to present proof that had no possible bearing upon the validity of his Exhibits 1, 2 and 13 and which properly should have been presented in his case in chief or adduced under permission by the Patent Office to reopen his case in chief for such purpose.

The holdings below were proper and therefore the decision of the Board of Appeals is affirmed.

Affirmed.