AERATION PROCESSES, Inc. v. WALTER KIDDE & CO., Inc., et al.

No. 21063.

United States Court of Appeals
Second Circuit.

Nov. 1, 1948.

---

[2] 24 Am.Jur., Gifts, § 24.

438

See also 77 F.Supp. 642.

Toulmin & Toulmin, of Dayton, Ohio (H. A. Toulmin, Jr. and Clayton E. Crafts, both of Dayton, Ohio, Hugh M. Bennett, of Columbus, Ohio, and John S. Powers, of Buffalo, N. Y., of counsel), for plaintiff-appellee.

Floyd H. Crews and Darby & Darby, all of New York City (Edwin T. Bean, of Buffalo, N. Y., and J. William Carson, of Belleville, N. J., of counsel), for defendants-appellants.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. We cannot agree with the district judge that this patent is valid. To the facts reported in his opinion (77 F.Supp. 647), we must add one important set of facts that he failed to note: As the patent states, the application, filed September 26, 1935, on which the patent issued, was a "continuation-in-part" of an earlier "co-pending application," filed February 8, 1934. Getz abandoned the earlier application but relies on its filing-date as the effective date for the patent in suit.

In that earlier application, he asserted that his invention consisted of the aeration of divers food materials, including cream, by using either (a) carbon dioxide or (b) nitrous oxide or (c) both combined. Carbon dioxide as well as nitrous oxide he there described as "a suitable gas." He did not there assert or disclose any significant difference resulting from the sole use of carbon dioxide excepting only that it caused a difference in the taste of the resultant cream product, i. e., it "gave a slightly sharp, but not unpleasant, taste to the cream, yielding a cream suitable for dispensing at soda-fountains, for either hot or cold drinks."[1] Even in the subsequent application, filed in 1935, he says that the results obtained from the use of carbon dioxide are "parallel in many respects" to those obtained from the use of nitrous oxide, other than as to taste, which, in this application, he says is "to many people unpleasant." But, even assuming arguendo that the 1935 application pointed out other significant differences, we must resort to the 1934 application to ascertain his alleged "invention"; and it discloses merely a taste-difference. The claims of that application include some for nitrous oxide, some for both nitrous oxide and carbon dioxide, and some for a "water-soluble gas." That nitrous oxide, like carbon dioxide, is "water-soluble" was then well known as shown, for example, by the article on chemistry in the ninth edition of the Encyclopaedia Britannica, published in 1878.

Plaintiff concedes that there was no invention in the use of carbon dioxide in the very same process described in the Getz patent. The alleged invention thus consists of the substitution of nitrous oxide for carbon dioxide. But the prior art disclosed such substitution in closely related aeration processes: Vander Weyde and Matthews (1869) showed the use of nitrous oxide as a substitute for carbon dioxide in making aerated drinks. Horsford (1870) showed that, for soda-fountain beverages,

---

[1] This application referred to a "gas more soluble than air"; and spoke of a "suitable gas, such as nitrous oxide or carbon dioxide." After describing an increase of volume, and effects on drainage at several pressures with differing percentages of cream, when using nitrous oxide, he said: "Carbon dioxide gas gave parallel but different results," illustrating only with 22% cream. The results reported when compared with those for nitrous oxide and 22% cream seem to show a slight advantage in favor of carbon dioxide. The application also said that, if it "is desired to dilute the sharp taste of the carbon dioxide," both carbon dioxide and nitrous oxide can be used; and it showed excellent results of this combination with 22% cream. Of the 14 claims in this 1934 application, one related to ice-cream; of the 13 others, five include both gases by name, two include any "water-soluble gas," and six, nitrous oxide alone.

nitrous oxide could be substituted for carbon dioxide. Put that together with Ashley (1920), who disclosed that carbon dioxide is soluble with milk to produce ice-cream, and it required no marked ingenuity to use nitrous oxide in place of carbon dioxide when making whipped cream. This becomes even plainer when one considers Feller (1933). He disclosed that, in making a milk beverage, carbon dioxide will dissolve, will increase the volume of the milk in a definitely ascertainable amount, and that "any other suitable inert or soluble gas" can be used in place of carbon dioxide. The Britannica article in 1878 had taught that nitrous oxide is such an inert or soluble gas.

The district judge concluded that Getz made what "was really a very unusual discovery and disclosure" which could not have been anticipated by reasoning from previous knowledge, i. e., that nitrous oxide "was soluble in fat, and, more important, nitrous oxide was found to be essentially equally soluble in fat as in serum." We think the previously known facts and the prior art demonstrate the unsoundness of that conclusion.

On Getz' own showing and that of Smith, Getz in 1934 did not think he had discovered what appellee now depicts as startlingly novel in the use of nitrous oxide —i. e., differentiations other than in taste. That these differentiations were discovered after the date of alleged invention is virtually admitted in appellee's brief: "It is probable that hindsight has taught us more about the properties of carbon dioxide and nitrous oxide than Getz knew. It was thought for a short time by Getz and Dr. Smith, even after the invention, that nitrous oxide and carbon dioxide had some common properties, although the distinctive qualities of nitrous oxide caused Getz to use it to the disadvantages of carbon dioxide." Dr. Smith, in a paper published in May 1934, had described the characteristics of the suitable gases for this "new aeration process." He stated that carbon dioxide is among the gases "which satisfy these characteristics." He added that carbon dioxide leaves the whipped cream "with a carbonated beverage taste," and that "for some uses this quality is not objectionable, but for others this is not satisfactory." That difference in taste was the only difference which he mentioned. He went on: "Nitrous oxide is the practical equivalent of carbon dioxide and has none of its objections." But the sole "objection" he then stated was the taste.

If, then, one looks at Getz' purported discovery as of the date of the alleged invention, it consisted exclusively of this: (1) Both carbon dioxide and nitrous oxide will yield whipped cream with practically the same desirable features; (2) if carbon dioxide is used, the cream will have a slightly sharp but not unpleasant taste.

An application of the empirically verifiable de gustibus doctrine cannot give rise to an invention. If Getz achieved a patentable invention, then a host of new cooking recipes will be patentable.[2]

■ 2. The district judge was much impressed by the fact that the defendant Food Devices, Inc., conducted the Reinecke interference proceeding against Getz, in which Getz won. But that victory has no relevance here; for the validity of the Getz patent, in the light of the prior art, was not in issue in that proceeding. See, e. g., Hendrickson & Nelson v. Ronning, 76 F.2d 137, 140, 22 C.C.P.A. (Patents) 1040.

■ 3. Plaintiff joined as defendants Drescher and Lee, the proprietors of stores which sold the accused device. Plaintiff at the trial offered no evidence against them; at the end of the trial it consented to the dismissal of the suit against them. Plaintiff sued all the defendants on two patents, but, at the close of its counsel's opening statement, withdrew one of the patents from suit. We remand solely for the purpose of having the district judge consider whether, on these facts, reasonable attorneys' fees should be assessed against plaintiff pursuant to 35 U.S.C.A. § 70.

Reversed and remanded.

---

[2] Since we hold the patent invalid, there is no need for us to consider other contentions made by appellants, including the contention that, as to certain of them, proper venue was lacking.