## AERATED PRODUCTS CO. OF LOS ANGELES v. AERATION PROCESSES, Inc.
### No. 11188.

United States District Court
S. D. California, Central Division.

Nov. 7, 1950.

On Motion for New Trial Jan. 8, 1951.

24

Howard C. Ellis, Manfred Warren, San Francisco, Cal., Flint & MacKay and Archi R. Tuthill, all of Los Angeles, Cal., for plaintiff.

Gibson, Dunn & Crutcher, Frederic H. Sturdy, Los Angeles, Cal., Brobeck, Phleger & Harrison and Moses Lasky, all of San Francisco, Cal., for defendant.

YANKWICH, District Judge.

## On the Merits

The above-entitled cause, heretofore tried, argued and submitted, is now decided as follows:

Judgment will be for the defendant that the plaintiff take nothing by the complaint and that the defendant do have and recover of and from the plaintiff the amounts due from the plaintiff as royalty and franchise charges to date, under the provisions of Sections 3 and 14 of the license agreement of May, 1947, with interest thereon, and *without offset,* the exact amounts to be computed in accordance with the provisions of Local Rule 7(h).

Findings and Judgment to be prepared by counsel for the defendant under Local Rule 7.

## Comment

As a guide for counsel in the preparation of findings on the issues raised by the complaint and the counterclaim, the Court states briefly its conclusions upon the main issues involved in the case.

The plaintiff seeks to recover the sum of $48,650.00 alleged to have been deposited with the defendant pursuant to a license agreement entered into by the plaintiff and defendant whereby the plaintiff was granted the exclusive license for the City and County of Los Angeles to the aerated products of the defendant. As a part of this license agreement, plaintiff was permitted to use certain steel containers patented, made and manufactured by the defendant, which were, at all times, its property. As a deposit for the return of these containers, certain sums were turned over to the defendant from time to time. The defendant agreed to repay such sums "on or before ten years after date". The agreement was contained in nonnegotiable receipts executed from time to time by the defendant and which called for the pay-

ment of interest at the rate of 5 per cent per annum. The defendant paid annually until just prior to the institution of this action. At that time, plaintiff informed the defendant that it would no longer use its containers and stored some 80,000 of them in a Los Angeles warehouse. The license agreement has *never* been cancelled or rescinded. The position of the plaintiff is that when it ceased the use of the defendant's containers, it became entitled to the return of the money deposited.

The plaintiff is somewhat in the position of the licensee in Automatic Radio Mfg. Company v. Hazeltime, 1950, 339 U.S. 827, 70 S.Ct. 894, as to which the Supreme Court said: "Petitioner cannot complain because it must pay royalties whether it uses Hazeltime patents or not. What it acquired by the agreement into which it entered was the privilege to use any or all of the patents and developments as it desired to use them. If it chooses to use none of them, it has nevertheless contracted to pay for the privilege of using existing patents plus any developments resulting from respondent's continuous research." 339 U. S. at page 834, 70 S.Ct. at page 898.

However, this license agreement *does not* give the plaintiff a right to terminate it at will and demand immediately the return of the money deposited. It can be seen readily that, with a business of the character involved here, where the defendant made a large investment in containers for the marketing of the product known as "Instant Whip", if every licensee were given the right, at any time, to demand the return of deposits, the company would be at the mercy of irresponsible licensees who could induce them to make large numbers of additional containers *only to discontinue their use after they have been made.*

So the object of the receipts was to protect against such contingencies by providing for the return of the money on or before ten years, during which period the licensee was paid interest.

Under the law of California, a written contract implies consideration and the payment of interest expressed in the contract, is, under any law, sufficient con-sideration for retention of another's money, whether we call it a loan or give it some other name. California Civil Code, Secs. 1614, 1914, 1915; Pitzer v. Wedel, 1946, 73 Cal.App.2d 86, 92, 165 P.2d 971; 47 C. J.S., Interest, § 22; 54 C.J.S., Loan, p. 658.

So it is quite evident that the plaintiff cannot at will accelerate payment unless legal grounds exist. None of the legal grounds urged by the plaintiff,—(1) *invalidity of the patent,* (2) eviction (both treated as failure of consideration), and (3) control by the defendant—is valid. One of the patents has been declared invalid by the Court of Appeals for the Second Circuit, Aeration Processes v. Walter Kidde & Co., 2 Cir., 1948, 170 F.2d 437. However, it is axiomatic that a case of invalidity in a Circuit other than the one in which the plaintiff here is doing business is not *res judicata* in other Circuits, and is not determinative of the validity of the patent. 3 Walker on Patents, Dellar's Ed., Sec. 609; Standard Brands, Inc., v. National Grain Yeast Corp., 3 Cir., 1939, 10 F.2d 814, 816; Triplett v. Lowell, 1936, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949. More, the licensee cannot question the validity of the patent under which he operates. Enterprise Mfg. Co. v. Shakespeare Co., 6 Cir., 1939, 106 F.2d 800, 804; Appleton Toy & Furniture Co. v. Lehman Co., 7 Cir., 1948, 165 F.2d 801; Automatic Radio Mfg. Co. v. Hazeltime, 1 Cir., 1949, 176 F.2d 799, 800. A ruling of invalidity of one of several patents does not constitute an eviction. 2 Walker on Patents, Dellar's Ed., Secs. 383–384. And, conceding that control of one corporation by another may, under certain circumstances, be considered duress, the facts in this case do not show such control. What the record discloses was an interlocking directorate of the type which has been given full recognition in the law of corporations. California Corporation Code, Sec. 820; Briggs v. Scripps, 1936, 13 Cal.App.2d 43, 45, 56 P.2d 277; and see, my opinion in Skelly v. Dockweiler, D.C. Cal., 1947, 75 F.Supp. 11, 14, and cases cited in Notes 5–7.

On the whole, the situation discloses arrangements entered into by plaintiff whose

chief stockholder and director "grew up" with the business of the defendant, with full knowledge of all the facts, willingly agreeing to the terms of every contract entered into, *receiving for long periods of years (since its organization in 1937, for the very purpose of distributing the defendant's product) benefits thereunder and never until just prior to the institution of this action on July 11, 1949, questioning any contract.*

■ So it is evident that, in addition to the grounds already indicated, there has been a *complete waiver* to assert the invalidity of the deposits and of the instruments under which the deposits were made.

Hence the ruling above made.

### On Motion for a New Trial.

The Court has reached the conclusion that the Motion for a New Trial is without merit.

Ordinarily, the denial of a motion for a new trial does not call for any extended comment on the part of the judge who tried the case. Necessarily so, for, except in cases where the motion is based on newly discovered evidence,—*which the motion before us is not,*—the legal questions involved are those argued during the trial and before submisison. And when the Court has had a full opportunity to determine these matters in advance of its decision,—*as was the case here,*—and has stated in a written decision and in findings the factual and legal bases for its judgment, little room is left for additional comment when the Court adheres to the conclusion arrived at in rendering judgment.

However, new counsel, formally associated in the case on the morning of the hearing of the Motion for New Trial, have sought to bring new issues, both factual and legal, into the case. For this reason, comment is necessary.

### I

### The Issues on Which the Cause Was Tried

The case was instituted by a complaint filed on June 20, 1949, in the Superior Court of California in and for the County of San Francisco. It was removed to the United States District Court for the Northern District of California on March 6, 1950, under Section 1441 et seq., 28 U.S.C.A. It was transferred to this Court on February 28, 1950, under the provisions of Section 1404(a), 28 U.S.C.A.

Originally set for trial before this Court for July 20, 1950, it was taken off calendar on stipulation of counsel, on July 11, 1950, and placed on the call calendar for September 11, 1950, for resetting. On that date, it was reset for October 31, 1950, along with other cases for that week. Although the other cases had priority, which would have required the litigants in the present case to trail for possibly two or three days, the case was given priority because counsel were nonresidents of the District. When the cause opened, counsel for the plaintiff called the Court's attention to the fact that a trial memorandum had been filed by the other side. Whereupon, the Court suggested that if time were sought to reply, priority would be given to another case. The following colloquy occurred:

"The Court: * * * The filing of this memorandum does not affect the status of the case. You are either ready for trial or you are not ready, and in that case I will give priority to another case set and trail you.

"Mr. Ellis: We are ready for trial, your Honor.

"The Court: That is all, then." (Transcript, p. 3, Lines 12 to 17.)

While the trial was completed in one day, long hours were kept and the printed transcript of the proceedings covers 199 pages.

The complaint, filed in the Superior Court, was titled "for money had and received." The first count alleged that the defendant *was indebted* to the plaintiff in the sum of $48,650.00, *for money had and received* by the defendant to and for the use of the plaintiff. In Count 2, it was averred that the same sum *was lent* to the defendant. And in Count 3, it was alleged that the same sum *was advanced* to the plaintiff with promise to repay.

Because of the pendency of the proceedings to remove from the State Court, all pleadings subsequent to the complaint were

filed in the Federal Court. The answer and counterclaim was filed January 31, 1950, in the Northern District of California. The substance of the answer is given in the memorandum filed on November 8, 1950. The plaintiff's pleading, denominated "Reply to Second Answer and Defense and Counterclaim", was not filed until after the transfer of the case to this court.

The record of the case thus indicates that for a period of over eighteen months from the institution of the case to and including the filing of the motion for a new trial, on December 4, 1950, counsel, who instituted the case, Howard C. Ellis and Manfred M. Warren of San Francisco, had complete control of the case. That they fully understood the issues which they sought to present to the Court is evidenced by the pleadings filed, by their conduct with relation to the case prior to and at the trial and the pleadings and documents which they filed after submission and before decision, outlining the issues which *they had sought to present*, to which the evidence was directed and upon which the decision of the Court, announced in the Memorandum Decision, dated November 7, 1950, and set forth more fully in the Findings and Judgment, filed on November 22, 1950, was based.

The Court's Memorandum stated three issues calling for decision: (1) the invalidity of the defendant's patent, to which the contract related; (2) eviction by a finding of invalidity by the Court of Appeals for the Second Circuit, Aeration Processes, Inc., v. Walter Kidde & Co., 1948, 170 F.2d 437—both treated as failure of consideration; and (3) control and overreaching of the plaintiff by the defendant in its various actions, including the execution of the nonnegotiable promissory notes, which made the acts performed by the plaintiff illegal and without consideration.

■ As stated, the complaint was cast in common counts. But, after the defendant filed an answer and a counterclaim for royalties due, the plaintiff filed a reply to both the second answer and the counter-claim. Under rule 7(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., a reply to an answer is not allowed unless the Court orders it. A counterclaim requires a reply. The pleadings, other than the complaint, having been filed in the Federal Court, the Federal Rules of Procedure control. Under California state procedure, a reply is not necessary either as to new matter in the answer or as to a counterclaim. Both are deemed to be controverted. California Code of Civil Procedure, Sec. 462; and see, Platner v. Vincent, 1924, 194 Cal. 436, 229 P. 24; MacDonald v. Reich & Lievre, 1929, 100 Cal.App. 736, 739–740, 281 P. 106; Yankwich, The New Federal Rules of Civil Procedure, 1938, p. 20; Yankwich, Procedure and Practice in Federal Civil Cases, 1949, 8 F.R.D. 641, 644. These matters are referred to in order to point to the fact that the issues upon which the cause was tried, implicit in the complaint, were laid down by the plaintiff in this reply, after the defendant had pleaded nonliability on its part under specific agreements and sought recovery of royalties due.

An analysis of the reply to the answer discloses, *in detail,* the issues raised. We summarize them in the order in which they appear in this pleading, with references to the paragraph of the reply:

(1) Invalidity of the Patent (III);

(2) Domination (IV);

(3) Lack and Failure of consideration as to the whole transaction (VI) and for change in the form of the contracts. (VII) These were coupled with statement of requests rejection by the defendants for renegotiation. (V(1).

The contention of complete failure of consideration was summed up in these words: "That said non-negotiable ten-year notes are wholly unsupported by any consideration whatsoever and were forced upon this Plaintiff against its will and consent by reason of the control exercised over it by said Defendant, its officers, majority stockholders and/or trustees." (VII.)

The reply to the counterclaim specifically reincorporated all the foregoing allegat-

ions. The whole pleading was concluded with the prayer that the defendant take nothing by its counterclaim and its second answer and defense and that the plaintiff have judgment as originally prayed for in the complaint.

The argument of counsel which is reported in full in the transcript (Pages 153–190) ended with the statement: "Mr. Ellis: * * * and I believe your Honor has my points in mind in regard to that *total and complete failure of consideration which resulted from eviction.*" (p. 189.)

The letter which counsel for the plaintiff addressed to the Court while the case was under submission again stressed the issues as herein outlined. (See photostat of letter attached as Appendix A to this Opinion.)

The objections, filed on November 21, 1950, to the proposed findings after the decision was announced, fully restated the legal and factual backgrounds upon which the case was tried.

The Motion for a New Trial, filed by the original counsel in the case, stated as grounds the following:

"A. Error of Law or in Admission or Exclusion of Evidence.

"B. Judgment Contrary to Evidence."

There followed seven pages of mixed specifications, reasons and argument,—an evident attempt to comply with our Local Rule 17, adopted to supplement the Federal Rules of Civil Procedure. The contention made by new counsel that the plaintiff was prevented by the Court from fully presenting its evidence upon the issues on trial *is not made in the Motion or in the reasons supporting it.*

Indeed, the only complaint on exclusion of evidence relates to the claim that the Court restricted the testimony to total failure of consideration. A reference to the transcript (page 151) shows that the observation of the Court related to a leading question asked by counsel for the plaintiff of Melvin S. Morse, the moving spirit behind the plaintiff, as to whether he received "any particular amount of planned advertising" (Transcript, page 151, Lines 13–14), to which the objection was sustained upon the ground that *there was no such covenant or agreement.* Then the Court made the observation referred to. And that question came in after the case had practically been concluded and the Court had declared a recess in order to give to counsel for plaintiff,—to use his own words,—*"about five minutes to go over certain matters to see whether they should be brought in and then we can conclude it."* (Transcript, Page 146, Lines 3–6.)

Prior to this, the plaintiff, after the defendant had rested, had placed Mr. Morse on the stand. His examination covers pages 139 to 152 of the transcript. In this examination, almost without interruption, the plaintiff sought to supply additional data which had not been brought out on the examination of the same witness in the case in chief. In effect, he testified to the worn-out condition of certain of the containers (Page 139, Lines 19–25, Page 140, Lines 1–14). The license agreement was gone over paragraph by paragraph and the witness was asked more questions relating to the maintenance of the containers (Page 140, Lines 16–25, Page 141, Lines 1–3). He testified to the main upkeep of the containers (Page 141, Lines 24–25, Page 142, Lines 1–5), and to the money expended for such maintenance (Page 142, Lines 18–21), as well as the average life of the containers (Page 143, Lines 15–25, Page 144, Lines 1–19).

It would serve no useful purpose to go through the entire transcript and point to the fact, adverted to in the oral argument, that new counsel have mistaken the Court's directions at the beginning of the case as to the order of proof as *rulings on admissibility.* Since the motion was argued, the Court has reviewed the entire transcript. Such review re-enforces the thought that, notwithstanding such directions, which aimed merely at controlling the order of proof, and were, in practically all the instances, accompanied by the modifying phrase, "at this time", *no evidence material to any of the issues was excluded by the Court.*

To elucidate further: The first ground urged as total failure of consideration, namely, the declaration of invalidity of patent, was considered and determined on the basis of the decision which was made Plaintiff's Exhibit 15, and of the ensuing competition in the plaintiff's territory. The point now urged that the effect of this decision was to make one of the litigants in that case the competitor of the plaintiff in this field *was* before the Court. Indeed, Mr. Morse testified that at least three devices performing the same function were in competition with him in California (Transcript, Page 147, Lines 1–25, Page 148, Lines 1–11). And he was permitted to testify that *such competition had taken 35 per cent of the volume of the plaintiff's business* (Transcript, Page 149, Lines 1–6). This inquiry was topped by the statement that Walter Kidde, the successful litigant in the case in the Court of Appeals for the Second Circuit, *was the chief competitor.* (Transcript, Page 149, Lines 5–25, Page 150, Lines 1–4.)

II

New Facts in the Case

We can readily see that if this matter were considered on the basis of a truncated record, there might be some justification for some of the inferences which new counsel seek to draw from the directions as to order of proof at the beginning of the case. But no such erroneous impression can be drawn from the complete transcript before us. For, whatever the Court may have stated as to the scope which the *prima facie* case should take, the fact remains that no facts material to the issues presented by the pleadings were excluded. And a study of the transcript since the trial has re-enforced me in this conviction.

 Ultimately, when a motion for a new trial is argued, or when a higher court reviews what was done in a court below, the question is not so much what the court suggested should be done at a certain stage of the case, but whether, at the conclusion of the case, the record shows the exclusion by the Court of material evidence offered in support of the issues.

See, McClyman v. Hamilton, 9 Cir., 1950, 180 F.2d 965, 968.

Because of the earnestness of new counsel, I state that I am convinced now, as I was at the trial, that this did not occur. Indeed, the objections to the findings by original counsel, the Exhibit which is attached to this Opinion, the grounds assigned for a new trial and the reasons by which it was sought to sustain them lend support to this conclusion.

In truth, new counsel gave the impression to the Court, despite their protests to the contrary, that they were trying to show that the case was not properly presented by the original counsel in the case and that new theories of law and new facts (*not newly discovered*) might have called for a different result. More specifically, it is insisted that prior to the trial of this action, on September 20, 1950, a notice of termination had been given. The notice was not brought to the attention of the Court. On the contrary, the entire case was tried, argued, submitted and decided on the assumption that the contract was not terminated, and that the grounds on which the plaintiff sought to recover the moneys represented by the nonnegotiable notes and resisted the recovery of the accrued royalties were the three fundamental issues to which the pleadings and the evidence were directed,—invalidity of the patent, eviction and control by the defendant,—all amounting to absence of consideration and failure of consideration. The Court's memorandum covered and stressed each of them.

 It is one of the objects of the motion for a new trial to call the trial court's attention to errors committed, whether they were noticed at the time of trial or not. It rarely happens that counsel, after trial, does not think of some points of law which he had failed to press. If the facts to which they relate are in the record, a trial judge *cannot* and *should not* complain because he was not given an opportunity before decision to consider them. Error is error, whether the attention of the trial court was called to it at

the proper time or not. As one of the Courts of Appeals has put it pithily, a motion for a new trial may be made "upon newly discovered law". Sulzbacher v. Continental Casualty Co., 8 Cir., 1937, 88 F.2d 122, 124. And, while this opinion was rendered before the new rules were enacted, the principle it announced governs today. The new rules do not purport to enumerate the grounds for a new trial, but state generally that they shall be those "for which new trials have heretofore been granted in actions at law in the courts of the United States". Rule 59(a), Federal Rules of Civil Procedure. Additionally, the new rules recognize the possibility of error which may occur to the Court itself without its being called to its attention by the losing side. For Section 59(d) of the Federal Rules of Civil Procedure allows a motion for a new trial by the court on its own initiative, within ten days after the entry of judgment, "for any reason for which it might have granted a new trial on motion of a party". But liberal though the courts are in interpreting these new rules, they do not permit a litigant to seek a new trial upon the ground that there existed evidence which the counsel who tried the case failed to present to the Court because of his *failure to evaluate it properly*. The principle was summed up by the late Judge Garrecht in one brief sentence: "Subsequent discovery of the importance of evidence which was in the possession of applicant for new trial, at the time of the trial, does not entitle him to a new trial upon the ground of newly discovered evidence." United States v. Bransen, 9 Cir., 1944, 142 F.2d 232, 235.

In that case, it was argued that if certain offers of sale and options, which had been in the possession of the appellant, had been brought to the attention of the Court, the result might have been different. While stating that the denial of the motion indicated that the so-called newly discovered evidence "would not affect a change of judgment", 142 F.2d at page 235, Judge Garrecht used the language just quoted in which the Court gave approval to the principle that the newly-discovered evidence rule does not include failure to evaluate properly evidence available at the time of trial. Or, as it has been otherwise put, it must be made to appear that the evidence proffered is "in fact newly discovered, and not merely the importance of it." 66 C.J. S., New Trial, § 101, p. 293, and see, Bradbury Estate Co. v. Carroll, 1929, 98 Cal. App. 145, 153–155, 276 P. 394. In the case at bar, newly discovered evidence was not designated as a ground for a new trial. The alleged unilateral termination of the contract is brought into the case, evidently as an afterthought. And, while counsel in a case may urge on a motion for a new trial, any principles of law applicable to the facts in the case, we believe it would be unfair to the successful litigant and to the Court which tried the case to allow a new trial upon the theory that, if a particular fact had been properly evaluated and brought into the case, logical and legal implications would arise which might result in a different judgment. More, it does not appear that the one-sided termination referred to was of the type of termination permitted by the agreement between the parties or would warrant different action either upon the claim of the plaintiff on which judgment went against him or on the claim of the defendant, brought in by the counterclaim, on which they had judgment.

On the whole, I believe that the plaintiff had a fair trial in a forum chosen by him as actor in the case, with full opportunity to present all the facts which bore upon the issues, under pleadings which fully and, to an extent beyond what the law required, stated these issues. The decision was against the plaintiff because the Court was, and is, convinced that the facts upon which his attempt to be relieved of some of the obligations assumed by him under the agreements with the defendant did not call for a different conclusion. More, no other facts have been shown to exist which would warrant a different judgment. Rule 61, Federal Rules of Civil Procedure.

The Motion for a New Trial is, therefore, denied.

Appendix A

Los Angeles, California,
November 3, 1950.

Honorable Leon R. Yankwich,
Judge, United States District Court,
United States Post Office and Courthouse
Building
Los Angeles 36, California.

Re: Aerated Products Company of Los
Angeles v. Aeration Processes, Inc.—
No. 11188-Y.

Dear Judge Yankwich:

On the issues as pleaded and as joined at trial and as referred to in defendant's letter of November 2, 1950, we respectfully submit, as and by way of reply to defendant's said letter, the following as our views of the alternative judgments possible:

I.

The plaintiff should recover the sum of $48,650 plus interest thereon for the years 1948 and 1949 and to date at the rate of 5% per annum, in the event the Court should find any of the following:

1. Total failure of consideration and eviction by reason of the decision of the United States Court of Appeals, 2nd Circuit, holding the Process Patent No. 2,294,172 invalid, or

2. If the Court finds that the return of the deposit on the containers in the amount above specified was due on a cessation of use of such containers and their tender by plaintiff to defendant, or

3. If the Court finds that there was lack of consideration to support the ten-year maturity receipts, or

4. If the Court finds that a license agreement, and particularly the second 1944 agreement, and the auxiliary ten-year maturity receipts were voidable by plaintiff by reason of domination, control and over-reaching by defendant.

II.

With respect to the defendant's counterclaim, it is respectfully submitted that:

1. If the Court finds that defendant has sustained its burden of proof of proving the contract, full performance thereunder by it and plaintiff's wrongful failure to pay royalties or franchise charges, the defendant is entitled to recover under its counterclaim the amount found to be so wrongfully not paid.

2. It is respectfully submitted that in so holding the Court must find that the holding by the United States Court of Appeals, 2nd Circuit, of invalidity of the Process Patent did not constitute a defense by plaintiff to the payment of royalties even though the Court should find that such holding did not work a complete termination of the agreements under I above.

III.

Defendant's contention for interest on royalties or franchise charges is, it is respectfully submitted, dependent upon whether the Court finds that the amount of plaintiff's deposit was due under any of the grounds set forth in I above, for in any such event plaintiff was entitled to immediate recoupment.

We have this day submitted a copy of this letter to defendant's counsel, Gibson, Dunn & Crutcher, at their Los Angeles office.

Respectfully,
Howard C. Ellis,
Manfred M. Warren,
Attorneys for Plaintiff.