**AERATION PROCESSES, Inc. v.
LANGE et al.**

**LANGE et al. v. AERATION
PROCESSES, Inc.**

Nos. 14416, 14417.

United States Court of Appeals
Eighth Circuit.

May 20, 1952.

Thomas, Circuit Judge, dissented.

H. A. Toulmin, Jr., Dayton, Ohio (Hugh M. Bennett, Columbus, Ohio, Marion S. Francis, St. Louis, Mo., and Clayton E. Crafts, Dayton, Ohio, on the brief), for Aeration Processes, Inc

John H. Bruninga, St. Louis, Mo. (Philip B. Polster, St. Louis, Mo., on the brief), for Louis A. Lange and Joseph B. Winkler, etc., et al.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The owner of Getz Patent 2,294,172 (continuation in part) filed September 26, 1935, issued August 25, 1942, entitled "Process of Making Aerated Food Products", and Getz Patent 2,435,682 (continuation in part) Application June 2, 1942, issued February 10, 1948, entitled "Aeration of Butterfat—Containing Liquids", appeals from a judgment of the District Court entered in six civil actions consolidated for trial. The judgment holds the patents invalid. The defendants in the actions cross appeal from a part of the judgment which holds, in the alternative, that if the patents were valid they were infringed. Voluminous testimony was taken upon the issues, and findings of fact and general conclusions of law were entered by the court along with the judgment but without an opinion to indicate the reasoning by which the conclusions were arrived at.

The evidence was that prior to the first of the patents, which is a process patent, the only known way to make whipped cream was to whip up rich cream with a fork, or in later years with an egg beater, infusing air into it. Getz was the first to disclose a process for making a product out of cream that is enough like whipped cream to be generally called whipped cream without any whipping and without infusing air into it.

By his process cream is put into some such a container as an old fashioned siphon bottle and "laughing gas", technically called nitrous oxide ($N_2O$), is admitted under pressure. The container is agitated to incorporate the gas under pressure in the composition of the cream and after absorption of the nitrous oxide in the cream a button is pressed to release a valve and the gasified cream comes out of the nozzle of the container ready to eat. Typical claims of patent 2,294,172 are:

1. The process of producing an aerated product which consists in causing an edible fat-containing liquid to absorb inert water-soluble non-acid forming gas under pressure of between 25 and 200 pounds per square inch and suddenly releasing the pressure.

4. The process of producing an aerated cream which consists in dissolving a quantity of nitrous oxide under pressure in a liquid carrying cream and thereafter releasing the pressure simultaneously therewith forming a product having the consistency of whipped cream.

The teaching was put into practice shortly after disclosure by Getz and a very substantial industry has resulted of manufacturing so-called "whipped cream" by that process and distributing it to soda fountains, restaurants, clubs, etc., where it is dispensed to consumers.

The second of the patents is on the product itself. What are claimed to be its essential characteristics attributable to the patented process were claimed and six claims allowed, of which claims one and two are typical as follows:

1. An aerated cream having the general consistency of whipped cream and having distributed therethrough minute gas cells containing nitrous oxide.

2. An aerated cream having the general consistency of whipped cream and having distributed therethrough minute gas cells containing a non-acid forming gas which is readily soluble in both the butter fat and the serum of the cream and which imparts substantially no odor or taste thereto.

*The process patent:* The record contains a writing by Getz over his signature dated September 29, 1933, when he was a young man working his way through college, in which he says, among other things, that "no one ever whips cream except by beating in air as far as I know" "I find that nitrous oxide works * * * when I charge cream under pressure with it and then let the cream out of the bottle. Whipped cream is produced nice and stiff". "It is better than carbon dioxide because it doesn't give the whipped cream a biting taste. It is because of this property of nitrous oxide that makes it seem practical to whip cream for commercial use and therefore worth getting patents if I can and I don't see why not". The experts in the Patent Office never have seen any reason "why not". During prosecution of the application for the process patent in the Patent Office an interference was declared in Reinecke involving claims 3 and 4 and the results were that Getz won before the Examiner of Interferences, the Board of Appeals of the Patent Office, and in the Court of Customs and Patent Appeals, Reinecke v. Getz, 126 F.2d 498, 29 C.C.Pa., Patents, 948. The process patent was also held valid in the District Court of New York in Aeration Processes, Inc. v. Walter Kidde & Co. Inc., 77 F.Supp. 647. The product patent was sustained by the Board of Appeals of the Patent Office. But the process patent was held invalid in the Court of Appeals of the Second Circuit in Aeration Processes v. Walter Kidde & Co., 170 F.2d 437, and, as stated, both patents were held invalid in the judgment here appealed from.

■ We look first with great respect to the decision invalidating the process patent in the Second Circuit, 170 F.2d 437, but deem it settled that it is not binding upon us as a case of stare decisis, Sbicca-Del Mac, Inc. v. Milius Shoe Co., 8 Cir., 145 F.2d 389. We have been obliged to consider the patent on our own account, and on the record before us it has appeared to us to be valid and we must so declare.

It is stated in the third paragraph of the opinion of the Second Circuit, 170 F.2d 437, 438, that in the case there before the court the plaintiff (owner of the Getz process patent) "concedes that there was no invention in the use of carbon dioxide in the very same process described in the Getz patent" and that "the alleged invention [of the Getz process patent] thus consists of the substitution of nitrous oxide for carbon dioxide." Also in the opinion, it is stated, "he [Getz] asserted that his invention consisted of the aeration of divers food materials, including cream, by using either (a) carbon dioxide or (b) nitrous oxide or (c) both combined." And it appeared to the court that Getz had substituted nitrous oxide for carbon dioxide simply because one

imparted better taste than the other, and as in the host of instances of new cooking recipes, there was no invention.

We take a different view. The record before us contains no such concession as was made in the Second Circuit, nor do we find any assertion by Getz that his invention consisted of aeration by carbon dioxide. In the case before us the evidence shows that Getz, after study, experimenting and observing, obtained unexpected and unforeseeable advantages by a process which he discovered of aerating cream with nitrous oxide under pressure and suddenly releasing the pressure and discharging the product and this novel product, the like of which had never been known before, promptly began and now continues to appeal to and please millions of people. The new process made it practicable to produce the confection in quantities and to extend the distribution of it commensurately with the demand. A substantial new industry of national scope has resulted. There may be. indulgence in calling the article "whipped cream" which used to imply cream that was rich in butter fat and had air beaten into it, because this Getz product does not have air beaten into it and the butter fat it starts out with gets dispersed to minuteness in the great expansion of the bulk of the product that takes place in the practice of the patented process.

Undoubtedly the full extent of the effects and the advantages of his process was not known to Getz when he first lit upon it and applied for patent. But to the extent that he did disclose a new and useful process it was patentable.

The main contention urged for him here is that he was the first discoverer and first taught that nitrous oxide is soluble in the butter fat and in the serum of cream and that he is entitled to have his patents read broadly to that effect. But we reach the same conclusion as did the Second Circuit, that Getz did not first disclose or teach as his discovery or invention that nitrous oxide is soluble in the butter fat and in the serum of cream. The production of "nice and stiff" whipped cream by his process stimulated research and investigation concerning the laughing gas he used

and the cream to which he applied it. Both are complicated and much that has been brought to light concerning them was not known to Getz when he applied for patent in 1934. He was, however, the first to experiment with and try out the strange chemical ($N_2O$) to make whipped cream and to discover that his process produced whipped cream that was "nice and stiff" and he rightly thought it would be of commercial use. He was certainly entitled to patent unless he came too late.

The prior art relied on to defeat both his patents was in the fields of (1) preparation of aerated drinks for beverage or medicinal purposes, Vander Weyde, et al. 88,348, March 30, 1869 (File-wrapper reference in Getz 172); Horsford, 104,311, June 14, 1870; Feller, 1,912,439, June 6, 1933 (File-wrapper reference in Getz 172); Graeff, 607,362, July 12, 1898; Sweeney, 1,570,975, January 26, 1926 (File-wrapper reference in Getz 172 and 682); (2) ice cream freezing, Kirkpatrick, et al. 1,329,-246, June 27, 1920; Ashley, 1,548,430, August 4, 1925 (File-wrapper reference in companion Smith patent 2,281,604), and (3) preserving food, Bart, 1,250,079, December 11, 1917 (File-wrapper in Getz 172); Akiyama, 1,538,369, May 19, 1925 (File-wrapper reference in Getz 172); Hemming, 970,623, September 20, 1910 (File-wrapper reference in Getz 172).

Our conclusion from consideration of all prior art and publication that has been cited to us is that there was no earlier teaching to inform anyone familiar with it that "nice" and "stiff" "whipped cream" would be produced by using nitrous oxide with cream in the way that Getz proposed and that his lighting upon the process was invention. He satisfied the requirements of patentable invention even of the concurring minority in Great A. & P. Tea Co. v. Supermarket Corp., 340 U.S. 147, 71 S. Ct. 127, 95 L.Ed. 162, in that he pushed back the frontiers of chemistry and physics and made a distinct contribution to scientific knowledge. Nobody will ever be tempted to go back again to a crude beating of air into rich cream to make whipped cream for commercial use. The discovery of the efficacy of the chemical $N^2O$ to ac-

complish the result by the Getz method renders any such a proceeding obsolete. Up to the time of trial there appeared to be no chemical that would alone achieve the object except the $N_2O$ that was first inventively chosen, tried out and found to be effective by Getz.

It is true that in arriving at his process Getz took into account that if he used carbon dioxide it would impart a taste to cream that has traditionally been associated in people's minds with spoiled or sour cream. He did not want to produce bad tasting food that would be useless in commerce. That appears to have been one of the reasons he never claimed carbon dioxide for use by itself in his claims. He knew that carbon dioxide and nitrous oxide were not the same. They had parallel characteristics in that they would both aerate but they would give different results. Just how different he may not have known and certainly did not disclose with any degree of completeness. But nothing in the record indicates to us that the use of carbon dioxide to produce whipped cream was an old art or that Getz so considered it or that he merely chose nitrous oxide as a substitute for it. Before his invention neither of the gases had been used to accomplish the object he was seeking. He chose the nitrous oxide by the kind of intuition which is inventive genius in the field of chemistry where there is no pre-vision and only actual test is demonstrative. Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610; Naylor v. Alsop Process Co., 8 Cir., 168 F. 911. This is a "chemical case", notwithstanding that practical inertness of the chemical instead of radical change in it was desired and attained in the process, and Getz was the original inventor of the process for making commercial whipped cream by the use of the particular chemical.

The court erred in holding his process patent invalid.

■ *The product patent, 2,435,682:* In the absence of opinion by the District Court, the fair inference from the record is that the product patent was there held invalid for the same want of invention over prior art that the court found in the process patent. In view of our conclusion that there was patentable invention, the part of the judgment invalidating the product patent on that ground may not be sustained. The product patent application was strenuously contested in the Patent Office and we find no showing in the record to overcome the presumption of validity attaching to the grant of the patent. The judgment is therefore reversed as to its declaration of invalidity of the product patent.

■ *The cross appeal:* The trial court found that:

"Defendants, Lange and Winkler have since May 1947, charged closed containers, each provided with a nozzle, a tube leading to near the bottom and a valve, with a cream mix containing 26 to 32% butter fat, 5% sugar and ¼% of a stabilizer comprising gelatin, tapioca powder, gum tragacanth and corn starch, and with a gas mixture comprising 85% nitrous oxide and 15% carbon dioxide at a pressure of 200 pounds per square inch. The charged containers are delivered to customers including the other defendants, who dispense the whipped cream mix therefrom by opening the valve and sell the same. Defendants Lange and Winkler have not dispensed whipped cream, nor sold whipped cream so dispensed. Defendants Lange and Winkler have since beginning September 1, 1947, purchased the gas mixture from S. S. White Dental Mfg. Co., which is the owner of Patent No. 2,155,260 describing and claiming the employment of such a mixture for the charging and dispensing of cream. A cream mix when charged with such a mixture at pressures of 80 to 100 pounds per square inch is from 5.8 and 6.1 times as acid as is cream charged with nitrous oxide at those pressures, but from the practical standpoint of taste it is not discernible as acid."

The facts so found as to the business of the defendants and the manner in which they carried it on are undisputed, and the cross appellants contend that they have committed no infringement of the plaintiffs' patents because they have dealt only with whipped cream produced by the use of a mixture of carbon dioxide and nitrous oxide in the proportion of 15 percent and 85 per-

cent, respectively, whereas the invention of Getz (if such it was) and his patents were limited to whipped cream and its production by the use of nitrous oxide alone. They especially stress the facts also shown without dispute and found by the court that "the original Getz application Serial No. 710,236, filed February 8, 1934, specifically claimed the employment of a charging gas mixture comprising nitrous oxide and carbon dioxide. After refusal of such claim by the Patent Office, that application became abandoned. The Application of Patent No. 2,294,172, filed as a continuation in part of the Getz 1934 Application, left out all description and claims of and to the employment of a mixture of nitrous oxide and carbon dioxide, and there are no such claims in either of the Getz patents, Nos. 2,294,172 or 2,435,682."

Consideration of this contention against the charge of infringement has persuaded that it is sound and should be sustained. The fundamental of Getz's claim to invention is that it is in the field of chemistry. His choice of a certain strange gas to subject to pressure and to force into solution with cream to obtain a new product was inventive choice. He discovered that it worked and he advanced the art. He rightly claimed invention and got his patent. But he abandoned the claim he had made to a mixture of nitrous oxide and carbon dioxide to produce whipped cream. He identified the mixture of the gases as one that he knew of and had considered for his purpose, but he stood on his abandonment of it through all the years of Patent Office proceedings. He shows no right to any monopoly in respect to the mixture to which he unequivocally and knowingly abandoned all claim. Patents for use of the mixture have been granted to others, as found by the court (see Patent 2,155,260), and others have long used the mixture. The specified percentages of the gases in the mixture used by defendants make it a real and substantial mixture of two gases, differing from either one of the constituent gases and defendants' use of the mixture of gases to produce whipped cream does not come within the scope of the Getz patents nor infringe them. The product from the use of the mixture is many times as acid as the product of $N_2O$ alone. The mixture is a departure from the Getz patents' teaching. The court erred in ruling in the alternative that defendants infringed if the patents were valid.

Reversed with direction to modify the judgment to accord with this opinion.

THOMAS, Circuit Judge (dissenting).

I would affirm the judgment appealed from on the ground that the patents involved do not measure up to the object and purpose of the patent law as expressed in the Constitution, that is "To promote the Progress of Science and the useful Arts * * *" Art. I, § 8, cl. 8. This is true, it seems to me, because nothing in the Getz patents appears to me to be new or novel within the meaning of the patent law. I am impressed that the decision of the trial court in this case and the decision of the United States Court of Appeals of the Second Circuit in Aeration Processes, Inc., v. Walter Kidde & Co., Inc., et al., 170 F.2d 437, are correct. The principles applicable to such a case are found, also, in Great Atlantic & Pacific Tea Co. v. Super-Market Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. An invention, to justify a patent, should "make a distinctive contribution to scientific knowledge." All that Getz claimed to have "contributed" to the science of chemistry in 1933 was that nitrous oxide "is better than carbon dioxide [for making whipped cream] because it doesn't give the whipped cream a biting taste." In other words, carbon dioxide contains some acid and nitrous oxide does not. The record discloses that this fact has been and is known generally by chemists. Any food containing acid has a "biting taste." Where acid is absent the sour or biting taste is also absent. Getz added nothing to the progress of the science of chemistry and the useful arts. He discovered only what any chemist could have told him would be the result before he used nitrous oxide to make whipped cream.